## MacMAHON et al. v. UNITED STATES LIFE INS. CO.

### (Circuit Court of Appeals, Fifth Circuit. March 8, 1904.)

### No. 1,223.

1. LIFE INSURANCE—PAYMENT OF RENEWAL PREMIUM—ACCEPTANCE OF DRAFT AFTERWARD DISHONORED.

Defendant issued life insurance policies, which were delivered on receipt of a year's premiums. They provided that they might be renewed from year to year by the payment of similar premiums within the days of grace allowed after the expiration of each year. After some years the insured wrote from Mexico asking defendant whether it had an agent there to whom a renewal premium could be paid, and, if not, to whom it could be sent, and received an answer that it might be sent to New York "by check, draft, or money order payable to the order of the company." Insured purchased a New York draft from a reputable bank in Mexico, payable to defendant's order, and mailed it to defendant, which received it before the expiration of the year, sent the insured renewal receipts for another year, and deposited the draft for collection. Subsequently, but before the draft was paid, the drawer bank suspended, and it was not paid. Defendant demanded the return of its renewal receipts, and, not receiving them nor further payment, declared the policies canceled, and refused to accept a renewal premium tendered a year later. *Held*, that the draft was not sent in payment of any indebtedness from the insured to defendant, the insured purchasing renewed insurance each year for cash; that having purchased a draft for the amount of a year's renewal premiums, payable to defendant and not indorsed by him, in accordance with defendant's instructions, which it received and accepted in payment for such renewed insurance before the suspension of the bank which issued it, defendant could not charge the loss thereon to the insured, and cancel his policies as for nonpayment of the premium.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Plaintiffs in error, citizens of Texas, sued defendant in error, a New York corporation, in an action at law on three policies of life insurance, aggregating $10,000, issued by the defendant on the life of Rudolph C. MacMahon, payable on his death to the plaintiff Agnes MacMahon, his wife, who had, before suit, assigned a half interest to her coplaintiff Charles W. Batsell. The defense pleaded was that the policies became void before the death of the insured, on account of nonpayment of premiums. The Circuit Court sustained this defense, and directed a verdict for the defendant. The policies were issued on the 22d of January, 1896, by the defendant in New York, and were thereafter delivered to the insured in Texas. Annual premiums amounting to $183.90 each year were payable in New York at the company's office, and in case of loss by death of the insured the policies were likewise payable there. Each policy contained the following provision: "This policy shall take effect only upon actual payment of the first premium hereon, and delivery of this policy to the assured (during the life time and sound health of the insured), in exchange for the company's receipt for said payment signed by the president, secretary, assistant secretary, or actuary. Failure to make payment of any subsequent premium, either to the company or to a duly authorized agent, in exchange for receipt signed as above, or non-payment of principal or interest on any note given in connection with this policy, when due, will render this contract null and void. Whenever this policy shall become null and void from any cause, all payments made hereunder shall become forfeited to the company, except that, after being in force three full years an extended insurance shall be allowed, in accordance with the requirements of chapter 690 of the Laws of 1892 of New York." The annual premiums for the first and second years were duly paid, and on the 25th of November, 1897, the insured wrote the defendant from Puebla, Mexico, where he was then sojourning, and, referring to the policies and the premiums

that would be due on the 22d of January, 1898, said: "I beg to come to you for information as to whom amount of premiums should be remitted. Have you an agent in Mexico authorized to receipt for such remittances, and if so, where? If not, shall I remit to New York office and to whom?" In reply, the defendant wrote him on the 3d day of December, 1897, as follows: "In reply to your communication of the 25th ult. would say that we have no agent. in Mexico. We would therefore request you to please remit the premiums falling due on your policies 85,650-51-52 direct to this office within the grace allowed. Remittance may be made by check, draft or money order, payable to the order of the company." Thereafter the plaintiff, Agnes MacMahon, purchased from the bank of Leon Raast, of the associated firm of Leon Raast and Raast, Headen & Co., of Puebla, Mexico, a draft or bill of exchange, payable to the defendant's order, drawn on Chas. Einsiedler, Rept. del Credit Lyonnais, New York, for $183.90 in American gold, for which she paid par, and this draft, without indorsement, was inclosed by the insured in a letter written from the City of Mexico to the defendant on the 10th of January, 1898, reading thus: "Enclosed please find draft for $183.90, being the amount due on my life policies Nos. 85,650, 85,651 and 85,652, due Jan. 22. Please mail receipts to me at above address, and oblige." The defendant received this letter and the accompanying draft on the 20th of January, 1898, and deposited the draft for collection and credit with the Importers' & Traders' National Bank of New York, that being its usual bank of deposit. Acknowledgment was made to the insured by letter dated the 21st of January, 1898, reading as follows: "Your favor of the 10th is received with remittance of one hundred, eighty-three, 90-100 Dollars, being amount of premiums due Jan. 22, 1898, on policies No. 85,650-1-2. Enclosed please find receipts for same, with postal card, which kindly fill out with your P. O. address in full, date, sign and mail to us, to complete our records, on which your address now is, 'El Paso, Texas.'" Inclosed with this letter were the receipts referred to. One of the receipts read: "$73.56. Received Seventy-three & 56-100 Dollars, being the annual premium due on the 22nd day of January, 1898, on Policy on the life of Rudolph C. MacMahon, Policy number 85,650, subject to all the provisions, conditions and agreements contained in the above mentioned policy and the application therefor, and those endorsed hereon, all of which are hereby referred to and made a part hereof. This receipt is not binding unless countersigned by the company's cashier or by ————————, agent. [Signed] C. P. Farleigh, Secretary." Across the face of this receipt was the following: "Countersigned by Arthur C. Perry, Cashier," the words "Countersigned by" being stamped, and "Arthur C. Perry, Cashier," being signed. There were notices and statements printed on the back, which are not deemed material. The other receipts were exactly like this, except as to amount and the numbers of the policies. On the 21st of January, 1898, the Importers' & Traders' National Bank presented the aforesaid draft to the drawee for payment, and payment was refused for want of funds, but the drawee stated that he supposed funds were on the way, and if the draft should be held it would probably be paid. The draft was then held until the 24th of January, 1898, when it was again presented, and, payment being again refused, was protested. One of the intervening days was Sunday, and another, being Saturday, was half holiday. The bank of Leon Raast suspended payments on the 21st of January, the day after this draft was received in New York. On the 25th of January, 1898, the defendant returned the dishonored draft to the insured, in a letter reading as follows: "We beg leave to advise you that the draft of Leon Raast, of Puebla, Mexico, on Chas. Einsiedler, Rept. del Credit Lyonnais, New York, to our order, for $183.90, enclosed with your favor of the 10th inst. to pay premiums due the 22nd inst. on policies 85650-51-52 upon your life was not paid upon presentation and has been protested for non-payment. We return said draft (with protest certificate) herewith. Said draft not having been paid, of course the premiums were not paid, and we therefore demand that you return at once the renewal receipts sent you on the 21st inst. As you are aware, the grace allowed for payment of these premiums expires on Feb. 22nd proximo, and unless the remittance for said premiums be paid by you on or before that day, the policies will become forfeited. You will also please send us remittance of $1.25 for notary's fee on the protested

draft." Neither the receipts nor the draft were ever returned to the defendant, nor did the insured remit, and after some correspondence the defendant, on the 5th of April, 1898, wrote the insured stating that the policies had lapsed owing to nonpayment. On the 12th of December, 1898, the insured notified the defendant by letter that he would probably tender the premiums due in January, 1899, and the defendant replied on the 14th of January, 1899, reasserting that the premiums of 1898 had not been paid, and that the policies had consequently lapsed. Thereafter, on the 17th of February, 1899, the insured, through a representative of Wells, Fargo & Co.'s Express, tendered the defendant to make in lawful money, at its office in New York, $183.90 in payment of the premiums due on the 22d of January, 1899. This the defendant refused to accept, on the ground that the policies had become forfeited and void by nonpayment of the premiums due on the 22d of January, 1898. No further payment or tender of premiums was ever made, and on the 30th of January, 1901, the insured died. There was a clause in the policies requiring proofs of death upon the company's blanks, and during the month of February, 1901, the plaintiff Agnes MacMahon applied to the defendant for blank forms to make out and furnish proofs of death, whereupon the defendant declined to furnish such blanks, and denied liability under the policies. Payment was formally demanded and refused, and the present action brought. The trial judge directed a verdict for the defendant. Plaintiff sued out error, and, with appropriate assignments, presents this action of the trial judge as erroneous.

A. L. Beaty, for plaintiffs in error.

Geo. Clark and D. C. Bolinger, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, having stated the case, delivered the opinion of the court.

In our opinion, the Circuit Court erred in directing a verdict for the defendant in this case. The policies were issued on the 22d of January, 1896, by the defendant, in New York, and were thereafter delivered to insured, in Texas. Each of these policies contained the following provision:

"This policy shall take effect only upon actual payment of the first premium thereon, and delivery of this policy to assured during the life-time and sound health of the insured, in exchange for the company's receipt for said payment signed by the president, secretary, assistant secretary or actuary."

It is clear that the dealings of the parties were for cash. No credit was in the contemplation of either, and there was no opportunity for a debt from the insured to the defendant to arise. The carefully guarded provisions with reference to the issuance of the binding receipts show that it was in contemplation of both parties that a receipt was to be delivered only upon payment of the premiums, and that its delivery put the contract evidenced by the policy into effect, to continue for the space of one year, with allowed grace. By the terms of the policies the company offered the insured the privilege of renewing the same in precisely the same manner—that is to say, for cash to be paid during the life of the policy (one year, with allowed grace)—and to obtain therefor a similar receipt, carefully guarded in its terms and execution, which should have the effect to continue the policy for the period of another year, with grace. In the provisions for such renewal—if renewal should be desired by the insured—there was the same absence of any intent on the part of either of the parties

to deal on credit, or to permit the bringing into being of a debt from the insured to the company. When the original dealings took place, the insured and his wife (the assured) were sojourning in Waco, Tex. The premiums then paid, and a like amount subsequently paid, carried the policies in full force up to the 22d of January, 1898. In the fall of 1897 the insured was sojourning in the city of Puebla, Mexico, from which city he wrote the defendant asking information as to whom future premiums should be remitted; whether they had an agent in Mexico authorized to receipt for such remittances, and if so, where? and, if not, whether he should remit to the New York office, and to whom? The defendant replied: "We have no agent in Mexico. You will remit premiums to the New York office within the grace allowed. Remittance may be made by check, draft or money order, payable to the order of the company." In compliance with this advice and directions, the insured procured in the city of Puebla, Mexico, banker's New York exchange, drawn "payable to the order of the company," for $183.90, American gold, and forwarded the same by mail to the defendant at its New York office, where it was duly received by the defendant on January 20, 1898. At this time the policies were still in force, and the insured was not indebted to the defendant in any amount. On the afternoon of January 20, 1898, this banker's draft, "payable to the order of the company," and not indorsed by the insured, the defendant deposited for collection and credit with the Importers' & Traders' National Bank of New York, that being its usual bank of deposit; and on the same day the defendant issued and mailed to the insured's address premium receipts in the customary and usual form, which, in due course of the mails, came into the possession of the insured. On the most approved judicial authority, it seems clear to us that this transaction, in no one of its particulars, evidences or tends to show the existence of a debt from the insured to the defendant; but, on the contrary, negatives such existence, and permits no inference to be made other that that the dealing was strictly cotemporaneous—the offer of a given price for a given kind and quality of insurance, and the acceptance of the offer as tendered. There is nothing in the evidence tending to show that at any time the insured obligated himself to pay the amount of the premiums, or did any act from which such an obligation could have been implied. The mere sending of the draft in compliance with advice and directions, "payable to the order of the company," and not indorsed by him, gave the defendant no right of action against him. It could not sue him on the draft, because he was not a party to it; it could not sue him on any obligation to pay the future premiums, because he had entered into no such obligation. He had parted with his money to the "drawer bank" in the city of Puebla, Mexico, and obtained the drawer bank's draft for the amount in American gold, which was the price of the article he wished to buy, namely, the defendant's receipts, which would put in force for another given period from the 22d of January, 1898, the policies originally obtained from the defendant. If we grant that the defendant need not have accepted this draft, and need not have executed and delivered to the insured, by mailing the same to him, the binding receipts until the draft was paid (as to which we express no opinion),

it did, immediately upon receiving the bill of exchange, execute and forward to the insured the very article which the bill was sent to buy. If the defendant had brought an action at law against Mac-Mahon for the amount of the premiums, counting on the same as a debt, or had brought its action on the draft, the courts would have held that MacMahon was not bound, and that the defendant's recourse was on the "drawer bank." In determining the question before us, we deem it immaterial whether the contracts of insurance are held to be New York contracts or Texas contracts. In our consideration of this case we have not proceeded on any theory that the law of New York has peculiar application to the action on these contracts. The decisions cited have the authority of the high court which rendered them, and of the sound reasoning with which they are supported in the opinions which accompanied their deliverance. Hall v. Stevens, 116 N. Y. 201, 22 N. E. 374, 5 L. R. A. 620; Shaw v. Insurance Company, 69 N. Y. 292; Gibson v. Tobey, 46 N. Y. 649, 7 Am. Rep. 335; Youngs v. Stahelin, 34 N. Y. 264; Noel v. Murray, 13 N. Y. 167; Whitbeck v. Van Ness, 11 Johns. 409, 6 Am. Dec. 383.

Of the decisions of the United States Supreme Court, cited by counsel for defendant, we have examined: Iowa Life Insurance Company v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204; Mutual Life Insurance Company of New York v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181; Equitable Life Assurance Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; Klein v. Insurance Company, 104 U. S. 88, 26 L. Ed. 662; and Thompson v. Insurance Company, 104 U. S. 252, 26 L. Ed. 765. We have found nothing in either of them which is inconsistent with the views we have expressed. The case of National Loan & Insurance Company v. Goble, 51 Neb. 5, 70 N. W. 503, does support the contention of the defendant, but we are satisfied that it is in opposition to the weight of precedent, and we decline to follow it.

There was, in these dealings of the insured with the defendant, not the slightest odor of fraud or trace of unfairness. The exchange on New York was drawn in the city of Puebla, Mexico, by a bank in good standing and credit at the time the bill was purchased, and was sent by mail to the defendant, and was received by it at New York before the "drawer bank" suspended payment. In accordance with the defendant's directions, the draft was made "payable to the order of the company." It was not indorsed by the insured. It cost the insured in actual money the precise amount for which it was drawn. The insured having been induced by the defendant to purchase it, and having parted with his money in perfect good faith, and duly delivered it to the defendant, which thereby became the owner of it, the resulting loss must rest with it, the owner at the time the loss occurred. The transaction, therefore, must be held to constitute payment of the premiums which the insured wished to pay and for which the defendant receipted, giving the policies effect for one year, with grace, from the 22d of January, 1898.

'There can hardly be a question that the subsequent actions of the defendant relieved the insured and the assured from the duty of remitting premiums to cover the subsequent years up to the death of

the insured. Within the year and allowed grace from the 22d of January, 1898, the insured made actual tender of the amount to meet the premiums required to give the policies effect after the 22d of January, 1899, and the money was refused on the ground that the policies had become void. The strictest law and the most searching equity did not require the repetition of this tender, without notice from the defendant that it would be received. The defendant having received payment of the third premium by the acceptance of the draft and its action thereon, and having refused to accept the tender subsequently made, the policies did not become void, and the assured's rights thereunder were not forfeited. Of course, the unpaid premiums are to be deducted, with interest, from the time at which they would have been received but for the action of the defendant.

It follows that this case must be reversed and remanded to the Circuit Court, with directions to that court to grant the plaintiff a new trial, and thereafter to proceed in the same in conformity with the views expressed in this opinion.

The question we have discussed seems to be the only one that is really controverted between the parties, therefore the other features of the case require no comment from us.

Reversed and remanded.

PARDEE, Circuit Judge, concurs in the result.

On Rehearing.
(April 5, 1904.)

PER CURIAM. The petition for rehearing is denied.