# MUTUAL LIFE INS. CO. v. CHATTANOOGA SAVINGS BANK.

No. 4173.   Opinion Filed May 4, 1915.

Rehearing Denied July 13, 1915.

(150 Pac. 190.)

1.     PAYMENT—Sufficiency—Payment by Check.   In the absence of an express agreement to the contrary, the acceptance of a check or draft in payment of a debt is conditional, depending upon the honor of the check or draft when presented, and in case of dishonor an action may be maintained upon the original debt.

2.     INSURANCE — Premium — Payment by Check — "Debt."   The annual premium stipulated for in a life insurance policy to be paid by the assured is not a "debt," and the strict rule governing the payment of debts by check or draft does not control the payment of such premium.

3.    **SAME—Cash Payment—Waiver.** The annual premium stipulated for in the policy in suit was payable in cash, and the insurance company had the right to demand cash in payment, but it also had the right to waive the payment in cash and to accept a check or draft in payment.

4.    **SAME.** The annual premium upon the policy in suit was not paid upon the due date, and before the expiration of the 30 days of grace allowed by the terms of the policy expired, the state agent of the company wrote the assured that payment might be made by a premium loan note for part and of the balance by personal check, inclosing the form of the note with this letter. The note was executed and returned with check, upon receipt of which the state agent retained the note and returned the check to the assured, with the request that he send bank draft in place thereof. This request was also complied with, the draft having been received on the last day of grace, and deposited to the credit of the company on the following day and presented to the bank upon which it was drawn four days later and protested because the issuing bank had closed in the meantime, the assured having died on the day following the deposit of the draft and prior to its protest. **Held,** that the premium was paid and the policy was in full force and effect at the time of the death of the assured.

5.    **APPEAL AND ERROR—Insurance — Review — Verdict — Good Faith.** The good faith of the assured in issuing and delivering the draft was a question of fact that was properly submitted to the jury under all the evidence, and the jury's finding upon this issue, being supported by the evidence, is conclusive upon this court.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by the Chattanooga Savings Bank against the Mutual Life Insurance Company. Judgment for the plaintiff, and defendant brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*B. B. Blakeney, J. H. Maxey, John A. Fain,* and *John M. Young,* for defendant in error.

GALBRAITH, SPECIAL JUDGE. This action was commenced by the Chattanooga Savings Bank, as assignee of the assured and the beneficiary of a life insurance policy issued to D. R. Rankin for the sum of $5,000, on the 7th day of October, 1904. A copy of the policy was attached

to the petition, and it was alleged that the assured died on the 8th day of November, 1907, and that the policy was in full force and effect at that time, and that the conditions of the policy had been complied with on the part of the assured, and plaintiff prayed for judgment in the amount of the policy and interest, less the indebtedness due on premium notes given. The defense was a general denial, and that the policy lapsed on account of the failure of the assured, or anyone in his behalf, to pay the annual premium due on the 7th day of October, 1907, and also that the policy had been assigned without the consent of the insurance company, contrary to the express conditions of the policy. There was a trial to the court and a jury, and a verdict for the plaintiff. Prior to the time of trial the policy in suit had been reassigned to Mrs. Rankin, the beneficiary therein, and judgment was entered upon the verdict in favor of the plaintiff for her use and benefit. From this judgment, the insurance company appealed to this court.

While many errors are assigned by plaintiff in error, there is but one important and controlling question argued in the brief, and that is whether the annual premium stipulated in the policy due the 7th day of October, 1907, was paid, or the payment waived. The policy, after reciting that the annual premium should be $194.65, payable on the 7th day of October of each year, at the office of the company at Newark, N. J., stipulated as follows:

"If the said premium shall not be paid in the manner hereinbefore mentioned, this policy shall become null and void, and all premiums paid be forfeited except as herein provided. The policy does not take effect until the first premium shall have been actually paid during the lifetime of assured; nor are agents authorized to make, order or discharge this or any other contract in relation thereto, or to waive any forfeiture hereof."

It is stated in the brief of plaintiff in error that:

"The first premium was paid at the time of the delivery of the policy. The premium, coming due on October 7, 1905, was paid by giving by the assured of a premium loan note in the sum of $185.75, and by applying as a credit the dividend of $13.90. The premium coming due October 7, 1906, was paid by the premium loan note of the assured in the sum of $303.50 and by cash payment of $66.75, and by a credit of dividend in the sum of $16.00."

The premium due on October 7, 1907, was not paid on that date, and, not having been paid October 31, 1907, J. O. Mattison, the state agent of the plaintiff in error, located at Oklahoma City, wrote the assured at Lawton, calling his attention to the fact that the premium had not been paid, and advising that it might be settled by the assured's premium note for $124.61, and a check for $70, and inclosed the form of note. Upon the receipt of this letter the assured executed the premium note and returned the same to the state agent at Oklahoma City with his personal check for $70. The agent retained the note and forwarded it to the office of the company at Newark, N. J., but returned the check of the assured to him at Lawton, Okla., with the statement, that owing to the conditions of the banks at Oklahoma City, he was not able to use a personal check, and requested that he send exchange for $70 covering this item. On the 5th of November, the assured, who was the cashier of the Merchants' & Planters' Bank at Lawton, received this check, canceled it, and charged the same to his account on the books of said bank and issued in lieu thereof the draft of that bank payable to J. O. Mattison, Agt., on the National Bank of Commerce of Kansas City, Mo., and inclosed the same in a letter addressed to the state agent at Oklahoma City. This letter was received on November 6th, and the draft was indorsed and deposited to the account of the state agent with the State National Bank of Oklahoma

City on November 7th. It was presented to the National Bank of Commerce for payment on November 11, 1907, and protested for the reason that the issuing bank had failed to open for business on November 7, 1907. The state agent of the plaintiff in error reported this transaction to his company under date of November 19, 1907, as follows:

"The Merchants' & Planters' Bank of Lawton, Okla., was unable to open their doors on the 7th inst., and immediately went into the hands of the Oklahoma Bank Examiner. * * * The premium under this policy was due Oct. 7, the amount being $194.61. On Oct. 31, 1907, I, at his request, forwarded to him premium loan request for $124.61, and at the same time requested him to send us check for the balance of $70.00 which he did, the request and check reaching here on the 4th inst. In the meantime, it had become impossible to handle personal checks and his check was returned to him, with the request that he send in lieu thereof bank exchange for the amount. This he did immediately, and I received on the afternoon of the 6th inst., exchange drawn by his bank on the National Bank of Commerce, Kansas City, Mo. This draft was banked here in the regular way on the 7th inst., the same day on which the bank at issue failed to open although I did not until later learn of the condition of the insured's bank. On the 14th inst., the draft came back to me protested, the protest papers stating that payment was refused, 'drawing bank closed.' The altered renewal receipt is still in my possession. I have thought it best to give you these facts, as there may arise a question of law in the matter."

It is contended on behalf of the plaintiff in error that the rule that a check or draft given for a debt is not payment unless there is an express agreement to that effect, and that the acceptance of a check or draft for a debt is conditional, depending upon its payment when presented, applies and controls this case, and that since the draft given for part of the premium was not paid, the policy was not renewed, and lapsed and became inoperative.

The statement of the rule contended for is announced in 22 Enc. of Law (2d Ed.) page 550, as follows:

"The execution by a debtor to his creditor of a negotiable bill of exchange, or draft, for the amount of his indebtedness does not, unless the parties expressly so agree, constitute a payment and discharge of the original indebtedness, but upon nonpayment of the bill or draft recovery may be had upon the original indebtedness."

See, also, *Day v. Thompson*, 65 Ala. 269.

This rule is well recognized. The question arises, Does it apply to the transaction involved in this case? The Supreme Court of Nebraska held that it did control in a similar case, that of *National Life Ins. Co., of Vermont v. Frederick E. Goble*, 51 Neb. 5, 70 N. W. 503. This is the principal case relied upon by the plaintiff in error to sustain its contention. While that action was against an insurance company, it was not an action on an insurance policy, but was instituted by the assured himself for damages alleged to have accrued by reason of the cancellation by the company of a policy of insurance on his life which it had issued and delivered. The policy in that case contained a similar provision to that in the policy involved in this action, heretofore set out, in regard to the payment of the annual premium and the forfeiture and cancellation for failure to do so. The premiums had been paid to keep the policy in force until July 1, 1891. In June prior thereto the agent of the company wrote the assured, calling his attention to the premium that would be due on July 1, 1891, and asked him "to remit by bank draft, registered letter, express or post office money order, to M. L. Roder & Bro., 403 Paxton Block, Omaha, Nebr." On the 26th of the month the assured purchased a draft of the Red Cloud National Bank payable as requested in the letter, and forwarded the same to the company. This draft was received June 27th, and on that day deposited in the Omaha National

Bank and sent for collection to the Chemical National Bank of New York. On presentation to the Chase National Bank, on which it was drawn, payment was refused, the Red Cloud Bank having failed on the 28th of June. The court held that the premium was not paid, and that the acts of the assured "placed the transaction and his rights thereunder within the rule that it was not a payment of the premium until the draft was received, presented, and honored," and that, the premium not having been paid, the verdict of the jury giving damages for cancellation of the policy was not sustained by the evidence, and should therefore be reversed. This decision, it seems to us, cannot be given great weight as an authority, for the reason that the court evidently fell into error in treating this annual premium as a debt and applying thereto the rule governing the payment of debts by check or draft. Clearly the annual premium due upon the policy of insurance is not a debt. It is not an obligation upon which the insurance company could maintain an action against the assured, and if it is not such an obligation, it is clearly not a debt. On the dishonor of the draft sent in payment of the premium, there could be no recovery "upon the original indebtedness," as the rule provides, for the reason that there is no original debt. The contract embodied in the policy stipulates that if the assured pays the amount of the premium on the date named, or within 30 days of grace allowed under the contract, then the contract of insurance is continued for an additional year, and if the premium is not paid, "this policy becomes null and void." The contract evidenced by the policy is not an assurance for a single year, with privilege of renewal from year to year by paying the annual premium, but is an entire contract of insurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums. The payment of the annual premium after the first is a condition subsequent,

which must be performed by the assured, and a failure to perform forfeits the contract; but the annual premium is not a debt of the insured's, and its settlement is not governed by the strict rule controlling in the payment of debts.

A better considered opinion, it seems to us, is that of *MacMahon v. United States Life Ins. Co.*, by the Circuit Court of Appeals of the Fifth Circuit, 128 Fed. 388, 63 C. C. A. 130, 68 L. R. A. 87. The facts of that case are, briefly, that the assured while living at Waco, Tex., purchased of the insurance company certain policies on his life, aggregating $10,000, payable to his wife as beneficiary. Some time afterwards he removed to the republic of Mexico, and prior to the due date of the annual premiums he wrote the company, asking if they had an agent in the republic that was authorized to receive the premiums on its policies, and if not to please direct him how to pay the premiums. In reply the assured was directed to buy New York exchange, payable to the order of the company for the amount, and to forward direct to New York. In compliance with that letter he went to the bank of Puebla, Mexico, and purchased a New York draft for the amount of the premiums, payable to the insurance company, and mailed this to the company at New York. The draft was received by the company and deposited for collection and receipts returned to the assured. When the draft was presented to the bank upon which it was drawn for payment, it was refused because the issuing bank had failed. The assured refused to pay the premiums again, and the company cancelled the policies. After his death suit was brought upon the policies, and the company defended on the ground that the same was canceled for failure to pay the premiums. The Circuit Court for the Eastern District of Texas agreed with the contention of the insurance company, and instructed a verdict for it. On appeal the Circuit Court of Appeals reversed this judgment and remanded the cause, and in so doing in part said:

"On the most approved judicial authority, it seems clear to us that this transaction, in no one of its particulars, evidences or tends to show the existence of a debt from the insured to the defendant; but, on the contrary, negatives such existence, and permits no inference to be made other than that the dealing was strictly contemporaneous—the offer of a given price for a given kind and quality of insurance, and the acceptance of the offer as tendered. There is nothing in the evidence tending to show that at any time the insured obligated himself to pay the amount of the premiums, or did any act from which such an obligation could have been implied. The mere sending of the draft in compliance with advice and directions, 'payable to the order of the company,' and not indorsed by him, gave the defendant no right of action against him. It could not sue him on the draft, because he was not a party to it; it could not sue him on any obligation to pay the future premiums, because he had entered into no such obligation.. He had parted with his money to the 'drawer bank' in the city of Puebla, Mexico, and obtained the drawer bank's draft for the amount in American gold, which was the price of the article he wished to buy, namely, the defendant's receipts, which would put in force for another given period from the 22d of January, 1898, the policies originally obtained from the defendant."

We are constrained to hold that the facts heretofore set out effectuated a settlement and payment of the premium within the 30 days of grace allowed by the terms of the policy. This premium, under the terms of the contract, was payable in cash. The insurance company had the right to demand cash in payment, but it also had the right to waive the payment of the premiums in cash, as was done as to the premiums due on the policy in October, 1905 and 1906, and to accept in payment notes, checks, drafts, or any other thing of value that might please it. It will be recalled that when this premium was not paid in cash October 7, 1907, it then asked for payment, part by note and part by personal check. When this request was complied with, the assured was requested to substitute

a bank draft for the personal check. This was done, and the company acted as if it were satisfied with the payment. We believe it was. At any rate, it must be held as a matter of law to have been satisfied with it. This conclusion is reached in view of the fact that the assured acted in good faith in making the settlement in the manner requested by the insurance company. No issue of fraud is raised by the pleadings, but it is argued on behalf of the insurance company that the assured, being the cashier of the bank issuing the draft, was bound to know the condition of the bank at the time the draft was issued, and must have known that it was insolvent, and that the draft would not be paid by the bank at Kansas City on which it was drawn when presented. However, this is not a question of law that the court can determine on this appeal. The good faith of the assured in issuing and delivering the draft was an issue that was properly submitted to the jury by the court under the evidence. The jury were particularly instructed on this issue in instruction No. 6:

"You are instructed in this case that if you find that the deceased, at the time he procured said draft, believed in good faith, as a reasonable man, that this draft would be duly honored upon presentation, then in that event he would be guilty of no fraud upon the agent of the defendant."

The court also in instruction No. 7, as bearing upon the good faith of the assured, submitted to the jury the issue of the effect of the custom established by the insurance company in conducting its business in this state of accepting checks in payment of premiums. We are concluded on this issue by the verdict of the jury, since this is supported by the evidence, and we must presume that the assured acted in good faith, and believed that the draft would be paid when he issued it.

Another important element affecting the good faith of the assured in this transaction, and which doubtless had weight with the jury, was the exceptional conditions then prevailing in commercial circles throughout the country. It appears from the testimony that during the latter part of October and the early part of November, 1907, a severe financial panic prevailed throughout the United States; that banks generally experienced difficulty in getting currency, and were extremely conservative in parting with it; that most of the business of the country was transacted by means of checks and drafts, and that clearing house certificates circulated as money in many communities; that, on account of this extreme condition, banks in Oklahoma Territory, under a proclamation of the Governor, had been closed from October 29th to November 4th. It may have been that all banks in the territory hoped to pull through, but none of them were, or could be, absolutely sure from day to day that they would be actually able to do so.

Again, there is another reason why the policy was in force and effect on November 8, 1907, when the assured died. Under the terms of the policy the assured had 30 days of grace from the 7th of October, 1907, in which to pay the premium. The last day of grace had expired on November 6. 1907, the day this draft for $70 was delivered to the state agent of the company. He knew, as shown by his own testimony, that the draft could not be presented for payment to the National Bank of Commerce of Kansas City, upon which it was drawn, for at least two days after it was deposited at Oklahoma City. He deposited the draft to his account on November 7th; that was after the 30 days of grace allowed had expired. This must be taken as an intention on his part to extend the days of grace at least until the time required to present the draft to the Kansas City bank for payment. If

this is true, the assured having died on the 8th of November, the policy was in full force and effect at the time of his death, and it could not be canceled for nonpayment of the draft on the 11th of November.

This court has announced the general rule governing waiver of condition in insurance policies in *Pacific Mutual Life Ins. Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270, as follows:

"That an insurance company may waive any provision in a policy intended for its benefit is a principle that requires no citation of authorities in its support. Where there has been a breach in the conditions of a policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture, by acts as well as words."

The acts of the state agent of the insurance company in accepting this draft on the last day of the 30 days of grace and depositing it for collection on the following day with full knowledge that it would take at least two days for the draft to be presented to the bank at Kansas City can only be construed as an act showing an intention to waive the forfeiture of this policy that might otherwise have been claimed by the company.

Again, in *St. Paul Fire & Marine Ins. Co. v. Cooper,* 25 Okla. 38, 105 Pac. 198, it is said:

"There being a breach of such condition the company may waive the forfeiture by acts from which an intention so to do may be fairly inferred."

These several acts of the agent of the insurance company, showing a purpose and intention to continue the policy in effect after the expiration of the 30 days of grace, amounted to a waiver by the company, and were not affected by the provision in the policy to the effect that its agents were not authorized to "waive any forfeiture thereof." *Pacific Mutual Life Ins. Co. v. McDowell,* 42 Okla. 300, 141 Pac. 273; *Pacific Mutual Life Ins. Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270. See, also

*Germania Insurance Co. v. Barringer,* 43 Okla. 279, 142 Pac. 1026.

The company had the right to waive any stipulation in the policy for its benefit and upon such terms as might be satisfactory to it. The acts of the agent in taking the renewal note and accepting the draft at the time could evidence no other purpose on the part of the company than to waive a forfeiture on account of the failure to pay the premium upon the due date, or within 30 days grace allowed under the policy, and, having deposited the draft with knowledge that it could not be paid until at least three or four days after the expiration of the 30 days grace, and the assured having died before the draft was actually presented for payment, the company cannot be heard to say that the policy was forfeited for non-payment of the draft. It would be just as reasonable to allow it to defend on the ground of nonpayment of the premium notes at maturity. It does not appear from the evidence that the company ever returned the premium note to the assured or his representatives, or ever returned to him the protested draft, although it does appear that the brother of the assured tendered payment of the draft on November 19th, before the death of the assured was discovered; his body not having been found until December 5, 1907. This tender of payment was refused.

Additional assignments of error, some fifteen in all, are argued in the brief. We do not deem it necessary to consider these in detail, since we are convinced from a careful consideration thereof that no one of these assignments rises to the dignity of violating a constitutional or statutory right, or tended to effectuate a miscarriage of justice in this case. *Noland v. Melvin, ante,* 147 Pac. 307.

For the reasons above given, the judgment appealed from is affirmed.

All the Justices concur, except BROWN, J., disqualified.