## STATE LIFE INS. CO. OF INDIANAPOLIS, IND., v. NOLEN. (No. 3630.)

Court of Civil Appeals of Texas. Texarkana. Jan. 24, 1929.

Rehearing Denied Feb. 7, 1929.

Arnold & Arnold, of Texarkana, Ark., for appellant.

King, Mahaffey & Wheeler, of Texarkana, Tex., for appellee.

LEVY, J. The appellant issued and delivered a policy of life insurance to Kimbol Nolen on February 14, 1924, in the sum of $2,000, payable to his wife, Bobbie Palmer Nolen. Kimbol Nolen, commonly called Jack Nolen, died November 27, 1927, at Seminole, Okl. The appellee, as beneficiary, brought the action upon the policy of insurance, and also to recover the statutory penalty and attorney's fees.

The defense was a general denial, and that the insurance was forfeited, and the policy lapsed by its terms for nonpayment of the premium due on February 14, 1927. The answer further pleaded, the facts being specially stated, to the effect that there was in fact no waiver, expressly or by intention, of the payment of the premium, nor waiver or estoppel of the right to declare the forfeiture of the policy for such nonpayment.

The appellee in reply set up estoppel. After hearing the evidence, the court peremptorily instructed a verdict in favor of the plaintiff.

The quarter-annual premium of $17.36, due February 14, 1927, was not paid at that time by the insured. The term of extended insurance provided by the policy was not applicable, because the insured had obtained a loan from the company in the sum of $53.21, which, with interest of $2, was due and payable on February 14, 1927. The policy provided that all premiums should be payable in advance, either at the home office or to an agent of the company. A grace of 31 days was allowable for any unpaid premium. No particular medium of payment is prescribed in the policy. Reinstatement was allowable "at any time after default in premium upon evidence satisfactory to the company of the insurability of the insured and payment of all premium arrears, with interest at the rate of five per cent. per annum, and the payment or reinstatement of any indebtedness which existed at the time of such default, with interest from that date." On May 27, 1927, the auditor of the company wrote a letter to the insured, advising him of the nonpayment of the February premium and of the loan amount with interest thereon. The insured does not appear to have received the letter, as he had shortly before removed from the address given in the letter. On July 3, 1927, the insured wrote a letter to the company, reading as follows:

"Please let me know what condition my policy is in. Have not heard from you for several months.

"Thanking you for the favor," etc.

The company made reply, on July 7, stating:

"The letter we wrote you on May 27, 1927, gave you the exact status of the policy. It may be that the letter did not reach you, or you may have misplaced the same, so we are enclosing a copy herewith. From the letter you will note that the policy lapsed on account of failure to take care of the premium and interest due on February 14, 1927, and is now on extended insurance. The length of the extended insurance period is October 4, 1927, and unless the policy is reinstated in the meantime it will be entirely out of force when the extended insurance expires. We

would be very glad indeed to have you take up with us the question of reinstatement, in which event all you would have to do is to take care of the payment of arrears with interest and furnish evidence of insurability satisfactory to the company. If you care to do this and will so advise us we will take pleasure in furnishing exact statement of the cost with instructions."

Afterwards, on October 10, 1927, the insured forwarded to the company's agent the medical examiner's report, showing examination of insured, together with a check for the required amount of reinstatement. The medical report was returned, and the company received back the medical report at its home office in Indianapolis presumably on November 13, 1927. On November 18, 1927, the company indorsed and deposited the check to its account in the Indiana National Bank of Indianapolis. The check given by the insured to the company reads:

"Seminole, Oklahoma, 10—10—27.

"The First State Bank: Pay to the order of the Life Insurance Company $55.00 fifty-five and no/100 dollars.

"For Insurance. ' Jack Nolen."

On November 21, 1927, the company addressed to the insured, and he received it, the following letter:

"Dear Sir: Your policy #295754 has been reinstated and we are enclosing herewith proper premium receipts for the February and May, 1927, premium payments, also interest on the loan, and our check #394326 payable to your order for $.47 covering over-remittance. Of course another quarterly premium will have to be paid within the grace period following November 14, 1927, and we are enclosing a notice of the same. We trust you will send in remittance of $17.-36 sometime before December 14, 1927.

"Yours very truly."

The above personal check of insured was properly presented to the bank at Seminole, on which it was drawn on November 22, 1927, and was protested for nonpayment on November 23, 1927, the reason given being "insufficient funds." The protested check was returned to the company on November 26, 1927. On November 28, 1927, the company addressed a letter to the insured, stating to him that the check was protested and returned, and, because of this nonpayment, "the premiums are not paid and the receipts we furnished you are invalid." The letter further inclosed a medical certificate, and requested the insured to have it made out and returned with premiums past due and $2 protest fees. At the date of the above letter the insured was dead, although the company did not know it. He was taken sick with typhoid fever on November 15, and died 12 days afterwards on November 27, 1927. During the last 5 days of his sickness the insured was delirious. He did not know of the protest of his check. Insured's bank account, in evidence, showed deposits at date of check and before exceeding the amount of the check. From October 11 to November 16, when insured was taken sick, with the exception of 10 days, the deposits in his name exceeded the amount of the check. If the check had been forwarded so as to reach the drawee bank on either November 14, 15, or 16, instead of being held from November 9 to November 18, it would have been paid by the bank out of deposits. These facts are all admittedly proven and are without conflict.

It was proven without dispute that an attorney's fee of $500 was a reasonable amount.

■■ The question is whether, upon the facts stated, the court erred in giving the peremptory instruction. The policy does not prescribe the form of payment of dues. The insured had the right to give, and the company to receive, a check in payment of the dues. And the circumstances, being undisputed, clearly indicate that a payment of the premium was effected, at least so as to continue the policy in force and preclude a forfeiture, although the check was not paid by the bank at a later time. State Life Ins. Co. v. Little (Tex. Civ. App.) 264 S. W. 322; Mutual Benefit Life Ins. Co. v. Bank, 47 Okl. 748, 150 P. 190, L. R. A. 1916A, page 669; Martin v. Ins. Co., 30 N. M. 400, 234 P. 673, 40 A. L. R. 406. The company accepted the medical report and the check, depositing it to its credit, and unconditionally issued receipts of reinstatement. Even the amount of overpayment was returned. The subsequent and delayed attempt at repudiation of the check is ineffectual as a defense. There is no pretense of fraud on the part of the insured. The effect of the evidence is to impute acceptance of the check as payment. The court did not err in giving the instruction.

The judgment is affirmed.

### On Motion for Rehearing.

Inaccuracies of fact appear, and are accordingly corrected. The medical report was received by the company presumably on November 13, 1927, instead of November 9; and the words "for collection merely" are eliminated.

■ The ruling was founded on the conclusion, and which conclusion is adhered to, that the letter of November 21, 1927, evidenced approval by the company of the medical examiner's report for reinstatement, the unconditional acceptance of the insured's check of date October 10, 1927, for the amount required for reinstatement, and the expressed consent to have the policy "reinstated." There is no pretense of fraud on the part of the insured. The decision intended was that the facts operated to impute acceptance of the check itself as in the nature of payment

of the amount for reinstatement to continue the policy in force and preclude a forfeiture. The giving of the check did not relieve the insured from payment in fact of the amount owing the company, but the liability for such payment was enforceable on the check as an undertaking to pay. The remedy of the company was on the check, in view of its acceptance for the amount owing, as evidence of the indebtedness for which it had been given. The default in payment of the check, after acceptance by the company, did not operate to forfeit the reinstated policy; there being no fraud.

The motion is overruled.