## TEXAS MUT. LIFE INS. ASS'N v. LOVE.
### No. 2479.

Court of Civil Appeals of Texas. Beaumont.
Dec. 8, 1933.

Rehearing Denied Dec. 13, 1933.

Richey & Sheehy, of Waco, for appellant.

E. A. Lindsey and J. B. Forse, both of Newton, for appellee.

WALKER, Chief Justice.

This appeal is from the district court of Newton county with appellee, Mrs. Mary E. C. Love, as plaintiff below, and appellant, Texas Mutual Life Insurance Association, as defendant. Appellee's cause of action was based upon a policy of life insurance for $2,500 issued by appellant to her husband, Dr. Frank S. Love, on April 23, 1928. Dr. Love died on or about the 27th day of December, 1931. The petition contained the necessary allegations to constitute a cause of action. The defense was that Dr. Love failed to pay a premium assessment of $5.50 due under the terms of his policy on October 1, 1931, resulting in its forfeiture. On September 10, 1931, appellant mailed to Dr. Love notice of the maturity date of this assessment, with the request that remittance be made by check, with the statement, "Your cancelled check is your receipt." Appellee also carried a policy of life insurance with appellant, and received from it a similar notice of the maturity of this premium assessment. Acting for herself and her husband, on September 15, 1931, she mailed to appellant, in good faith, a check for $11 covering the premiums on both policies. This check was drawn upon a bank where she and her husband had done their banking business for eight years. This check was received by appellant in due course of mail, deposited for collection in its bank at Waco, and duly forwarded for collection, but payment was refused with the notation made on the check "insufficient funds." By letter dated October 8, Dr. Love was notified by appellant that it had forfeited his policy, and under instructions from appellant Dr. Love filled out an application for reinstatement, which was refused. The dishonored check was retained by appellant, and no effort was ever made by it, prior to the institution of this suit, to tender or surrender it, either to Dr. Love or appellee. All assessments (about fifty in number) made upon his policy prior to his death, except the assessment due on October 1st, had been regularly paid by him by remitting checks, which were invited by appellant. Dr. Love's policy provided for the payment of one assessment per year of $5.50 as annual dues, to be paid on or before the 1st day of October each year, and provided further that failure to pay this assessment should forfeit all claim under his policy of insurance. Section 15 of appellant's by-laws provided that failure to pay annual dues when due should operate as a complete forfeiture of all rights under its policies of insurance. Appellant refused payment on the Dr. Love policy, and suit was instituted thereon, as stated above. The trial was to the court without a jury with judgment in favor of appellee for the full amount of the policy with interest, costs of court, etc.

Opinion.

Appellant thus states the issues presented by this appeal: "This appeal involves two questions, first, whether there is any evidence in the record justifying the court in holding that the check sent by the plaintiff to the defendant to cover the annual dues assessment was accepted by the defendant as an absolute payment of the assessment, and second, whether the pleadings of the plaintiff are sufficient to sustain a finding that the check in question was accepted as an absolute payment of the annual dues assessment."

We think the facts are sufficient to support the trial court's conclusion that the check was received and held by appellant in payment of the October assessment. Fifty payments had been made by Dr. Love by remitting his checks, just as he remitted for the October premium, and this was done expressly at the request and invitation of appellant. There was nothing in the notice mailed Dr. Love nor in the terms of his policy nor in appellant's by-laws to the effect that a dis-

honored check should operate as a forfeiture of the policy. This fact is significant because it is a matter of general knowledge that many times checks written and mailed in the utmost good faith are refused for want of funds in the drawee bank. On this issue the court, in Northwestern Life Assur. Co. v. Sturdivant, 24 Tex. Civ. App. 331, 59 S. W. 61, 62, said: "It was incumbent on the company, if it desired to retain its right under the contract to forfeit the policy, to have stipulated that the check would be without effect upon the contract, unless paid in due course. Not having so taken the check, the effect of its act was, to say the least, a noninsistence on the very provision upon which it seeks to predicate a forfeiture."

■■ Dr. Love was in no way obligated to pay the October assessment. Before remitting his check, he had the option of paying and thereby keeping his policy in force, or of refusing to pay, thereby forfeiting his policy. By mailing his check to appellant, he became liable to appellant to pay the $5.50 evidenced by the check; thus holding the check, appellant had the option of enforcing its collection by suit or by any other method recognized by law. It constituted a liquidated demand against Dr. Love. It is true that appellant notified Dr. Love that his policy had been forfeited, and under instructions he filled out an application blank for reinstatement, which was refused. This was not a controlling fact. Appellant could not arbitrarily declare a forfeiture not authorized by the facts and the conditions of the policy at the time the forfeiture was declared; thus appellant could not, as a matter of law, by retaining the dishonored check under the facts stated, declare a forfeiture of Dr. Love's policy. Whether or not the check was received and held by appellant in payment was a fact question for the trial court. In State Life Insurance Co. v. Nolen, 13 S.W.(2d) 406, 407, the Court of Civil Appeals, affirming the judgment of the trial court, said: "The question is whether, upon the facts stated, the court erred in giving the peremptory instruction. The policy does not prescribe the form of payment of dues. The insured had the right to give, and the company to receive, a check in payment of the dues. And the circumstances, being undisputed, clearly indicate that a payment of the premium was effected, at least so as to continue the policy in force and preclude a forfeiture, although the check was not paid by the bank at a later time."

On motion for rehearing, the court found the following significant fact: "There is no pretense of fraud on the part of the insured."

Reversing the judgment of the Court of Civil Appeals in that case, 24 S.W.(2d) 22, 23, the Commission of Appeals said: "The trial court should have submitted to the jury the issue of acceptance of the check for the premium by the insurance company, and should not have held, as a matter of law, that Mrs. Nolen was entitled to a judgment against the Insurance Company."

The decisions cited above rest primarily upon the proposition "that a premium on an insurance policy is not a debt in the sense that the insurance company can enforce payment of the same." Timmerman v. Bankers' Reserve Life Co. (Tex. Com. App.) 63 S.W.(2d) 687, 691.

Thus, in Mutual Life Insurance Co. v. Chattanooga Bank, 47 Okl. 748, 150 P. 190, 192, L. R. A. 1916A 669, it was said: "Clearly the annual premium due upon the policy of insurance is not a debt. It is not an obligation upon which the insurance company could maintain an action against the assured, and if it is not such an obligation, it is clearly not a debt," and the court continues with the assertion that: "Its settlement [meaning the premium] is not governed by the strict rule controlling in the payment of debts" (by the giving of checks in payment thereof).

In State Life Insurance Co. v. Little (Tex. Civ. App.) 264 S. W. 319, 322, the court held that ordinary business prudence would demand that the dishonored check be returned before declaring a forfeiture. Discussing the legal effect of holding a dishonored check, the court said: "In the case of a life insurance premium, however, if a check is given and accepted in lieu of the premium, the life insurance company acquires a right against the insured which it did not have before the receipt of the check. Prior to that time the only right which the company had, in the event of a failure to pay the premium, was to forfeit the policy, but after a check is given the company has the additional right to hold and treat the check as a personal obligation and to collect the same by suit. We think this proposition is sound and is sustained by the authorities."

This proposition has been thoroughly annotated by L. R. A. 1916A, 669. On page 680 of the annotations is cited Veal v. Security, etc., Ins. Co., 6 Ga. App. 721, 65 S. E. 714, from which we quote as follows:

" 'Where a check or promissory note is given for a pre-existing debt, the transaction is not, however, wholly without legal incidents and effects. Payment is not necessarily effectuated, but the creditor holds additional evidence that there is an indebtedness; and further, the rate of interest may be changed, and the time of the maturity of the debt may be extended. In case there is no pre-existing debt, and the transaction between the parties is one that would otherwise be on a cash basis, and one party tenders a check and the other takes it and retains it, even after notice of dishonor, the necessary legal effect is that the check is held in lieu of cash. It is readily conceivable that in many cases a creditor, having the privilege of accepting the cash only, would prefer to hold the debt-

or's check (his promissory writing bearing 7 per cent. interest) to rescinding the trade. In the case at bar, so long as the insurance company held Veal's check, he was absolutely liable to them for the principal and interest on it. How could the company consistently retain this liability against him, and still insist that his policy was void because the premium had not been paid in cash?'

"With reference to the effect of sending the check for collection, the court said: 'We would not be understood as saying that if a policy holder sends a check in payment of his premium, and the company merely sends the check for collection, a payment of the premium results from this alone, if the check is dishonored. Commercial usage is to the contrary. If, when the company in the present case discovered that the check had been dishonored, it had within a reasonable time tendered the check back to the insured, it could justly have insisted that the policy had lapsed.' "

Appellee's pleadings were sufficient to support her judgment. She duly pleaded a compliance with the terms and provisions of the policy and that all premium assessments had been paid. Appellant pleaded certain facts as constituting the forfeiture relied upon. The law implied a general denial to these allegations in behalf of appellee. Under the allegations of her trial petition and of the implied general denial to appellant's allegations of forfeiture, she had the right to offer proof that the check was forwarded to appellant at its request, received by it, deposited by it for collection, and held by it after dishonor, without surrendering it back to her. These facts raised the issue of payment, which the trial court decided in her favor.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.