## 17791

Elizabeth F. TURNER, Respondent, v. PILOT LIFE INSURANCE
COMPANY, Appellant
(120 S. E. (2d) 222)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence,
*for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent,*

June 1, 1961.

OXNER, Justice.

This is a suit to recover the death benefits under a policy issued by the Pilot Life Insurance Company on October 25, 1957, insuring the life of James B. Turner, in which the

plaintiff, his wife, was named as the beneficiary. Under an endorsement the insured was permitted to pay the annual premium in monthly installments of $17.05 each on the 25th day of each month. The policy contained the usual 31 day grace period provision. The insured died on November 18, 1958. In its answer the Company admitted the issuance of the policy but alleged that it lapsed for nonpayment of the premium due September 25, 1958 and was never reinstated. As a further defense, it alleged that the insured committed suicide within two years from the date of the policy, thereby limiting its liability under the suicide clause to an amount equal to the sum of the premiums paid on the policy, which amount was tendered to the beneficiary and refused. At the conclusion of the testimony, each side made a motion for a directed verdict. That of the plaintiff was granted and from the judgment entered thereon, the Insurance Company has appealed.

The material facts are undisputed and may be summarized as follows:

The insured resided at Florence, South Carolina. All monthly premiums through August 25, 1958 were paid. Within the grace period the insured forwarded to the home office of the Company at Greensboro, North Carolina, his personal check on the Bank of Florence for the premium due September 25th. The check was dishonored by the Bank of Florence for insufficient funds and returned to the Company. On October 31, 1958, the same day the check was received, the Company wrote the insured that his check for the September premium had been returned unpaid causing the policy to lapse, but offered to reinstate the policy if the application, which was enclosed, was completed and returned to the Company by November 15, 1958, together with a remittance of $34.10 to cover the September 25th and October 25th monthly premiums.

On Saturday, November 15, 1958, the insured returned to the Company its letter of October 31st, together with the

application for reinstatement duly completed and his personal check, dated November 3, 1958, on the Bank of Florence for $34.10. This letter was received by the Company on Monday morning, November 17th. The check was removed and deposited on that day in a Greensboro bank. The application for reinstatement was then turned over to a clerk whose duty it was to handle reinstatement applications. Either on the afternoon of November 17th or the early morning of November 18th, this employee reviewed the application for reinstatement to determine whether it was properly completed, timely mailed, and the proper remittance made. She concluded that it was in order, noted thereon "approved 11-18-58", and turned it over to the accounting department. Thereafter on the afternoon of the same day the insured died.

On November 19th the premium ledger card on the policy in question was duly credited by the accounting department with the September and Ocotober premiums. On the same day the assistant secretary of the Company, apparently then unaware of the insured's death on the previous day, wrote him as follows:

"This policy has been reinstated and your remittance applied to cover the September and October 25, 1958 monthly premiums.

"The November 25, 1958 monthly premium will soon be due. This is called to your attention now so you will have a reminder to send remittance on time."

The check above mentioned for $34.10 was presented to the Bank of Florence on November 20th. Payment was refused on account of the death of the drawer and there was noted on the check "deceased". It was then returned through regular banking channels. For some reason, unexplained in the record, the check was again presented to the Bank of Florence on November 26th. The bank again noted on the check "deceased" and two days later returned it to the forwarding bank. The Company claims that it was never noti-

fied of the nonpayment of the check until December 2, 1958. The record does not disclose when it first learned of the death of the insured but in any event it kept the check, introduced it at the trial of the case and never made any effort to return it to the beneficiary or the insured's estate.

Although the check for $34.10 was not dishonored for lack of sufficient funds, the records of the Bank of Florence showed that insured never had on deposit from November 15th to the date of his death a sufficient balance to take care of the $34.10 check. However, on November 4, 1958, the day after the date of the check, he had a bank balance of $137.66.

Appellant concedes, and properly so, that the previous course of dealings with insured warranted an understanding that premium payments could be made by check. But it says that all such checks were received on the condition of their being honored upon presentation and that since payment of the $34.10 check was refused, whatever may have been the reason therefor, it had a right to declare the policy forfeited for nonpayment of premium. The further contention is made that reinstatement amounts to the making of a new contract and that insured died before the contract was consummated. Appellant's view is that the letter of October 31st "was no more than an invitation by appellant to the insured for the insured himself to make an offer to contract", and that no contract could come into existence until such offer was accepted and insured notified of its acceptance, which was not done until November 19th, the day after insured died.

Respondent first contends that the check was accepted in absolute payment of the premiums due. She says that appellant must look to the check which she has offered to pay. The argument is made that the acts of the Company in writing the letter of November 19th, in failing to notify the beneficiary or the insured's estate of the nonpayment of the check, in re-presenting it to the bank for payment and in retaining the check up until the time of the trial of the case are all in-

consistent with theory of a conditional acceptance. Respondent takes the further position that regardless of whether the check was received conditionally or in absolute payment of the premiums, its acceptance at least bound the Company not to declare a forfeiture during the time required for the check to be sent through regular banking channels to the bank on which it was drawn and that the insured having died during this period, the rights of the parties became fixed and would not be affected by the fact that the payment of the check was refused by the drawee bank after the death of the insured.

We find it unnecessary to determine whether the check was accepted in absolute payment of the past due premiums, for we agree with respondent that in any event appellant waived its right to a forfeiture during the time required to present the check at the bank upon which it was drawn.

An extended review of the decisions relating to the effect of the dishonor of a check given in payment of an insurance premium will be found in an annotation in 50 A. L. R. (2d), beginning on page 630. Also, see 29 Am. Jur., Insurance, Section 536; Appleman, Insurance Law and Practice, Volume 14. Section 8144. In many of the cases cited the checks were dishonored prior to the death of the insured, a situation with which we are not now confronted and need not decide. We have found only a few cases involving facts similar to those now presented.

A case closely analogous is *Mutual Life Insurance Co. v. Chattanooga Savings Bank,* 4 Okl. 748, 150 P. 190, 194, L. R. A. 1916A, 669. In that case the Company sought to lapse a policy for failure to pay an annual premium due on October 7, 1907. On November 5, 1907, within the grace period, the insured forwarded to the Company a note for a part of the premium and a bank draft to cover the balance. The Company had agreed previously to accept a premium note in part payment. This letter was received by the Company on November 6th and the draft deposited on Novem-

ber 7th. On November 11th the draft was presented for payment and protested for the reason that the issuing bank had failed to open for business on November 7th. The insured died on November 8th. The Company contended that the receipt of the bank draft was conditioned on its payment and having not been paid, the policy lapsed. Recovery on the policy was allowed on two grounds, one of which was that it was the intention of the Company by acceptance of the draft to extend the days of grace at least until the time required to present the draft for payment and the insured having died during that period, the policy was in full force and effect at the time of his death. The Court said:

"The company had the right to waive any stipulation in the policy for its benefit and upon such terms as might be satisfactory to it. The acts of the agent in taking the renewal note and accepting the draft at the time could evidence no other purpose on the part of the company than to waive a forfeiture on account of the failure to pay the premium upon the due date, or within 30 days' grace allowed under the policy, and, having deposited the draft with knowledge that it could not be paid until at least 3 or 4 days after the expiration of the 30 days' grace, and the assured having died before the draft was actually presented for payment, the company cannot be heard to say that the policy was forfeited for nonpayment of the draft."

In *National Benefit Life Insurance Co. v. Brown,* 41 Ga. App. 741, 154 S. E. 469, 471, the Court drew a distinction between a situation where the insured died before the check was dishonored and where death occurred after such dishonor. In that case on the last day of grace the insured forwarded his personal check to the company in payment of a premium. Payment was refused by the bank on account of lack of funds. After the check was dishonored, the insured died. It was held that the policy had lapsed. In commenting on the difference between death before and after dishonor, the Court said:

"An insurance company will be held to any waiver of its right to a forfeiture under the terms of the policy, made at any time prior to the death of the insured. Accordingly, although by the terms of a policy the premium is payable in advance and in cash, the company, by accepting for transmission and collection a check received by it on or after the last day of grace, binds itself to extend the period of grace until the time required to present the draft at the bank upon which it is drawn. Not having receipted for the premium or accepted the check except for collection, on such presentation and on dishonor of the draft, the benefits to the insured under the company's waiver become exhausted, and in the absence of an additional waiver the policy becomes forfeited."

*Mutual Life Insurance Co. v. Chattanooga Savings Bank, supra,* was distinguished by the Georgia Court as follows:

"The case of *Mutual Life Ins. Co. v. Chattanooga Savings Bank* decided by the Supreme Court of Oklahoma, and reported in 47 Okl. 748, 150 P. 190, L. R. A. 1916A, 669, is distinguishable on its facts from the instant case. In that case it was held that the acceptance of a check for transmission and collection on the last day of the period of grace constituted a waiver of the company's right to a forfeiture until the check was transmitted to the drawee bank for presentation and payment. In that case, contrary to the the the facts in the instant case, the insured died during the time covered by such waiver, whereas in the instant case the check had been dishonored and returned during the life of the insured, upon which the rights of the insured under the waiver became exhausted, and the attempt to prolong the period of waiver during which the company would accept payment was made after the policy had become *functus officio* and dead by reason of the previous death of the insured."

In *Martin v. Illinois Bankers Life Assurance Co.,* Mo. App., 91 S. W. (2d) 646, it was held that the insurer's acceptance of a check after the expiration of the grace period was conditioned upon its being paid when presented and

where, during the life of the insured, it was not paid upon presentment, the Company was entitled to claim a forfeiture of the policy as of the date the check was received. There the insured died about two hours after the check was dishonored. However, the clear inference from the opinion, particularly that portion denying a petition for a rehearing, is that the result would have been different had the insured died before the check was dishonored.

Also, see *John Hancock Mutual Life Insurance Co. v. Mann, 7* Cir., 86 F. (2d) 783, 109 A. L. R. 775.

It was held in *Allen v. Jefferson Standard Life Insurance Co.*, 139 S. C. 41, 137 S. E. 214, that if insurer's course of action is such as to lead insured honestly to believe that the sending of a note or check accompanied by an application of reinstatement will operate to prevent forfeiture of his policy, and he acts in conformity thereto, the insurer will be estopped to claim forfeiture under the policy provisions. We think this principle is applicable here.

The fact that insured did not have sufficient funds on deposit to meet the check does not require a different result. Payment of the check was not refused on this ground but because of the death of the maker. Even if sufficient funds had been on deposit, the bank could not have honored the check because the death of the insured revoked its authority to pay it. Nor can we presume that the insured intended to give a fraudulent check. He knew that it would require several days for the check to go through regular banking channels and may have intended to make the necessary deposit before the check was presented.

We find no merit in appellant's further contention that no contract for reinstatement ever came into existence. There is a difference of opinion as to whether the reinstatement of an insurance policy constitutes a new contract. 29 Am. Jur., Insurance, Section 369. A life insurance policy of the kind now before us is ordinarily regarded as an indivisible and continuous contract of insurance for life, subject to discon-

tinuance or forfeiture for nonpayment of any premium installment with the right on the part of the insured to revive after lapse on compliance with certain conditions. But whatever may be the nature of a reinstated contract, we think appellant became bound not later than the morning of November 18th when the reinstatement department approved the application. We attach no significance to the fact that credits were not made by the accounting department on the premium ledger card until the following day because this was a mere matter of bookkeeping. No question was ever raised as to insured's insurability. All that was required by appellant in its letter of October 31st was that the application for reinstatement be completed and forwarded to it, along with a remittance for past due premiums, not later than November 15th. Insured complied with this offer. We need not determine whether the reinstatement became effective when assured mailed his letter of November 15th. See 29 Am. Jur., Insurance, Section 374; Annotation in 167 A. L. R., page 338. We do not agree with appellant that to effect this reinstatement it was necessary that its acceptance be communicated to the insured.

Finally, on this phase of the case, appellant argues that if it was not entitled to a directed verdict, the Court at least should have submitted to the jury the question as to whether the policy had been reinstated. But the facts upon which we have rested our decision are undisputed and present solely a question of law. The Court properly held as a matter of law that the policy was in force and effect at the time of insured's death.

The remaining exception relates to the exclusion of certain evidence offered in proof of the defense of suicide. Appellant sought to show that just prior to insured's death, he was in bad financial condition necessitating borrowing money to pay premiums; that he carried far more life insurance than his meager income warranted; that he was short in his accounts as treasurer of a local

union; and that he was an experienced hunter, well versed in the handling of firearms. The Court did not rule the proffered testimony incompetent but merely held it would not be admitted until appellant proved some circumstances surrounding the insured's death indicating the possibility of suicide. No such proof was ever offered. In fact, counsel frankly conceded that he had no evidence along this line. The result was that there was no evidence showing how or under what circumstances the insured met his death. It is conceded that the order of proof is left to the sound discretion of the trial Judge, *Ford v. A. A. A. Highway Express,* 204 S. C. 433, 29 S. E. (2d) 760, but it is claimed that the ruling of the Court below was tantamount to an abuse of discretion. We do not think so. The trial Judge might well have concluded that it would be highly prejudicial to admit testimony of this character unless there was some other evidence supporting an inference of suicide. All that the proffered testimony tended to show was motive. Although motive is a circumstance to be considered in determining whether or not death is the result of suicide, 46 C. J. S., Insurance, § 1358, p. 559, proof of motive alone is insufficient to warrant the submission of that issue to the jury. *International Life Insurance Co. v. Carroll,* 6 Cir., 17 F. (2d) 42, 50 A. L. R. 362.

Appellant seems to be under the impression that the death certificate was admitted in evidence generally when in fact it was admitted solely for the purpose of showing the date of insured's death. However, even if it were considered, it negatives suicide. It shows that insured died from "gunshot wound in chest" and that he "accidentally shot himself while climbing over a fence."

Affirmed.

TAYLOR, C. J., LEGGE and MOSS, JJ., and J. M. BRAILSFORD, JR., Acting Associate Justice, concur.