42    19
s51NW 962
129    309

# The Michigan Mutual Life Insurance Company v. Mary E. Bowes.

*Insurance—Notes in payment—Renewal receipts.*

Where an insurance company takes a note when a premium falls due, and gives therefor renewal receipts, the policy continues in force and the company cannot afterwards insist upon its forfeiture as for non-payment.

Where an insurance company takes the notes of some other person than the assured when the premium falls due, it cannot, as against the assured, insist that they did not amount to a payment. So *held* where a husband's life was insured for his wife's benefit and his notes were given in renewal of the policy.

Where interest-bearing notes are taken instead of a cash payment, it is a legal presumption that the transaction was for the interest of the party taking them.

A provision in an insurance policy that if a policy for its surrender value is taken, it must be demanded within one year from the time an accrued premium falls due, refers to an accrued premium for the non-payment of which the company can determine the policy.

Error to Wayne. Submitted Oct. 15. Decided Oct. 28.

ASSUMPSIT on insurance policy. Defendant brings error.

*Wilkinson, Post & Wilkinson* and *C. A. Kent* for plaintiff in error.

*Maybury & Conely* for defendant in error. Where an insurance company accepts a note for a premium that has fallen due, and does not insist upon payment or the forfeiture of the policy, nor stipulate that it shall be forfeited on non-payment of the note, the law will not imply such an agreement to aid a forfeiture, but should leave the parties to insist on a strict forfeiture when it may be asserted, or save that right by express agreement in the policy or by other stipulation, *New England Mut. Fire Ins. Co. v. Butler*, 34 Me., 451; *New England Mut. L. Ins. Co. v. Hasbrook*, 32 Ind., 447; *McAllister v. New England Mut. L. Ins. Co.*, 101 Mass., 558; the custom of an insurance company in repeatedly receiving notes for premiums after former premium notes have become past due, waives the punctual payment of them and estops them from asserting a forfeiture of the policy, *Cotton States L. Ins. Co. v. Lester*, 8 Rep., 141.

COOLEY, J. There are no disputed facts in this case. On the fifteenth day of November, 1873, the plaintiff in error issued to Mary E. Bowes, the defendant in error, a policy of insurance by which the payment of ten thousand dollars was assured to her on the death of her husband, William R. Bowes, in consideration of the payment of an annual premium of four hundred and thirty-

four dollars and eighty cents.   Mr. Bowes himself effected the insurance, and instead of paying the first premium in money, gave his note therefor.   November 15, 1874, the second premium was paid, and the note which was given for the first was taken up.   November 15, 1875, Mr. Bowes gave his note for the third premium, less sixty-two dollars, the amount of certain allowances made to him by the insurer.   November 15, 1876, the amount of this note was added to the fourth premium, and two notes were given by Mr. Bowes therefor, one of $538.83, due in seven months with ten per centum interest, and one of $222.39, due in sixty days.   This last note when it fell due was renewed for ninety days, and was made to bear ten per centum interest.   Neither of these notes was ever paid.   The premium which fell due November 15, 1877, was not paid, nor was any note or other security given for it.   Mr. Bowes died November 17, 1878.

It was provided in the policy that if the premiums should not be paid when due, the company should not be liable for the payment of the sum insured or any part thereof, and the policy should cease and determine, excepting only that on the surrender of the policy duly receipted, within one year after an accrued premium was due, the insured being then alive, the company would issue a paid-up policy for the amount the surrender value would purchase as a single premium.   Claiming that the notes were in legal effect payments of the premiums for which they had been given, Mrs. Bowes, on November 8, 1878, tendered to the company a surrender of the policy and demanded a paid-up policy for the surrender value, which the company refused to issue while the notes remained unpaid.   The surrender value would at that time have purchased a paid-up policy for $1210.85. For this sum Mrs. Bowes thereupon brought suit, and in the circuit court recovered judgment.

There was no express agreement to receive the notes in payment of the premiums, and it is therefore insisted

that, according to the well settled rule in this State, they cannot amount to payment until actually paid. *Gardner v. Gorham*, 1 Doug. (Mich.), 507; *Hotchin v. Secor*, 8 Mich., 494. It appears, however, that renewal receipts were given when the notes were taken, so that by the express act of the company the policy was kept alive, and the company precluded from any right to insist upon a forfeiture up to November 15, 1877.

In determining whether the notes shall be considered payments, it is important to note that the paper given for premiums was not the paper of the insured. It was indeed the paper of the person on whose life the risk was taken, but had Mrs. Bowes given the paper of any third person, the case would have been no different. The company has taken the paper of another person than the assured for the premiums the assured was to pay, and if the paper is paid, will receive a large interest thereon. Now, although it is conceded that the taking of this paper was for the accommodation of the assured, it is nevertheless a legal presumption that the insurer found it to its interest to make the arrangement, so that the delay in the payment in consideration of the promise to pay interest is to be considered as agreed upon for the mutual advantage of the parties. And had the notes been paid at any time prior to the demand for a paid-up policy, it cannot be disputed that Mrs. Bowes would have been entitled to receive it.

But although the notes were not then paid, the insurance company had an undoubted right to proceed and collect them, together with the interest, which was the legal inducement for giving credit. The company might also have sold them; and this as between the company and Mrs. Bowes would have been equivalent to collection. And the notes, so far as we know, remain in the hands of the company as its property to this day, and may be collected of the estate of Mr. Bowes if that is solvent.

Under these circumstances we are of the opinion that the insurance company is precluded from denying that the notes were taken in payment for the premiums. As

has been stated above, there could have been under the circumstances no forfeiture of the policy prior to November 15, 1877. It was in full force at that day, and if the premium then falling due had been tendered, the company could not have refused it because of the notes remaining unpaid. Now, although the contract provides that a policy for the surrender value must be demanded within one year from the time an accrued premium was due, we think this means an accrued premium for the non-payment of which the company had a right to determine the policy; and there was no such accrued premium due until November 15, 1877,—the company having expressly renewed the policy to that day.

There is another consideration which is not unimportant. The fair meaning of the policy, and of the statute in accordance with which it was given, is that the insured, when he becomes unable or for any reason fails to keep up his payments, shall have the advantage of all he has made, in a paid-up policy proportioned to the amount. If instead of receiving currency the company has taken the commercial paper of third persons which may be collected afterwards, it is obvious that the assured cannot have the full benefit of his contract unless such paper is treated as payment. Suppose, for example, that Mr. Bowes were still living, and that his notes should now be collected; it is manifest that the company would then receive the full benefit of the contract on its side, including full consideration for the delay, but that the insured would be wholly deprived of the benefit promised to her in a surrender policy, if any other view were taken than is here adopted.

We think the judgment must be affirmed with costs. If in this particular case the company proves to be a loser in consequence of the insolvency of the maker of the notes, it is a result that can be provided against in the future by express stipulations.

CAMPBELL, C. J., and GRAVES, J., concurred. MARSTON, J., did not sit in this case.