NORTHWESTERN LIFE ASSURANCE COMPANY v. MATTIE B. STURDIVANT.

Decided October 24, 1900.

**1. Life Insurance—Payment of Premium by Check—Waiver of Forfeiture.**

A life insurance policy provided for its forfeiture upon nonpayment of the premiums at certain dates, and the company, at the time a premium was payable, accepted a check from the insured and issued an unconditional receipt for the premium. After the date the premium fell due, April 25th, the check was presented to the bank and its payment refused, and the company then sent the insured a second notice, stating that the policy would be forfeited for nonpayment of that premium if the amount was not paid by May 15th. Upon receipt of the notice the insured at once forwarded such amount, which reached the company May 20th, and was promptly returned with notice that the policy had lapsed. Held, in affirming judgment against the company for the amount of the policy, that it will be deemed to have accepted the check as absolute payment, or at least to have waived strict compliance with the terms of the policy in regard to the time and manner of the payment.

**2. Same—Penalty and Attorney Fees—Demand Necessary.**

Under the article of the statute providing that when a life insurance company fails to pay a loss after demand made therefor, it shall be liable for 12 per cent damages and reasonable attorney fees, a demand is necessary, even though the company had already declared the policy forfeited and notified the beneficiary that it would not be paid; and the filing of suit on the policy is not a demand within the intent of the statute. Rev. Stats., art. 3071.

APPEAL from El Paso. Tried below before Hon. J. M. GOGGIN.

*Turney & Burgess,* for appellant.

*Patterson & Buckler,* for appellee.

JAMES, CHIEF JUSTICE.—Appellant contended that the policy on the life of appellee's husband was forfeited. The following facts, which according to our view of the case are the material ones, appear from the evidence:

Sturdivant had a policy on his life in the Northwestern Masonic Aid Association, dated October 25, 1893. Appellant had absorbed and

assumed the obligations of this association. The premiums were payable every two months at the office of appellant, which was in the city of Chicago. The premium in question, pursuant to a notice regularly given, became due on April 25, 1897. Prior to that time Sturdivant had paid his premiums by checks, drafts, or money orders, sent by mail; a great many having been paid by his checks on a bank at Amarillo, Texas. On this occasion he sent appellant by mail his check on the bank at Amarillo, which reached appellant at Chicago April 24th, and on the same day a receipt for the premium as paid was mailed to him by appellant. The check was deposited by appellant in its bank at Chicago, and when presented through correspondents of that bank was not paid by the bank at Amarillo, and was protested, involving $4.50 protest fees,—Sturdivant having no funds in the latter bank. This check appears to have been retained by appellant. On May 6th, appellant wrote Sturdivant informing him of the fact, and of the protest fee and charges, and requesting him to remit same promptly, also to provide for the payment of the April premium within the time still allowed, as per second notice sent him the day previous to protect the insurance from lapsing. This second notice was as follows:

"Chicago, Ill., May 5, 1897.

"Edwin L. Sturdivant, 84,408.

"Your attention is hereby called to the fact that, in accordance with the terms of your policy No. 74,034, issued by the Northwestern Masonic Aid Association, now the Northwestern Life Assurance Company, a bimonthly premium for mortuary, reserve, and general fund purposes, amounting to the sum of $7.25, due at this office April 25, 1897, is unpaid, and the regular delinquent charge has accrued. This calls for your immediate attention, as, unless said premium, together with 25 cents delinquent charge, is paid at this office on or before May 15, 1897, your membership in said company will thereupon lapse and your policy become null and void.

"I trust that the necessity for this second notice arises entirely from oversight on your part, and that you will not allow your policy to lapse.

"Chas. A. Capwell, Secretary.

"Second Notice."

Sturdivant and his wife were absent from Amarillo, and he received this notice at El Paso, it having been forwarded from Amarillo, and with a letter dated May 13th, he sent appellant the amount of the premium and protest fee and the delinquent charge of 25 cents, which, however, did not reach appellant on or before May 15th. This remittance was forthwith returned to Sturdivant, with notice that before it was received his policy had lapsed for nonpayment of the premium.

The provision of the policy in reference to the second notice reads: "A notice of any premium delivered to a member, or left at his residence or place of business, or mailed postpaid to the address as last

furnished to the secretary of this association by such member in writing, shall be considered as duly served, and in case the insured shall fail to pay such premium at the office of the association on or before the day when the same shall fall due, a delinquent charge, not less than 25 cents, will be added, and a second notice will be served, and if the same be not paid at the office of the association within the time therein specified, the insured's membership in this association shall lapse, and this policy shall become null and void." A by-law of the association provided for the same means for delivery or service of this notice.

Upon Sturdivant's death, his wife, to whom the policy was payable, filed this suit, asking for judgment thereon, and for the statutory penalty of 12 per cent damages and reasonable attorney's fee, alleged to be $200, this without any demand on appellant for payment of any specific sum from appellant as due on the policy. The court directed the jury to return a verdict in favor of the plaintiff for what was due on the policy and for the damages and attorney's fee.

*Conclusions of Law.*—1. Appellant, by receiving the draft on April 24th, in lieu of cash, and issuing an unconditional receipt for the premium, waived its right under the contract to insist upon such premium being paid in cash on or before April 25th.

There was no acceptance of the check upon the condition that if it should not be honored it should not have any effect as payment of such premium, nor affect the right of appellant to declare a forfeiture. If it was accepted as a payment of the premium,—and the issuance of the absolute receipt for the premium as paid, and the fact that the check was deposited as the funds of the company, and not simply for collection and protest fees created and asserted, and the check retained, show such an acceptance,—then there was no basis for the subsequent proceeding to declare a forfeiture on account of such premium. But if not so accepted, and the premium be deemed paid only when the draft should be paid, the acceptance of the check in this manner would necessarily be an extension of time, and necessarily involve a waiver of the provision of the policy requiring the premium to be paid in cash on or before the 25th, for the cash could not have been obtained from Amarillo, nor could it have been presented for payment at Amarillo, within the time.

A waiver of payment as contemplated by the policy,—that is, in cash, and by a certain date, was the result of the company taking Sturdivant's check under these circumstances; and having waived this provision, it could not insist on a forfeiture of the policy upon the theory that he had not paid the premium on or before the 25th of April.

If Sturdivant had been in Amarillo when the check was presented, and he had no funds in the bank to meet it, and he had then provided for its payment, this, under the circumstances, would certainly have been timely payment of the premium. The company must therefore be deemed either to have accepted the check as payment, or at least to have

waived strict compliance with the terms of the policy in regard to the time and manner of payment. It was incumbent on the company, if it desired to retain its right under the contract to forfeit the policy, to have stipulated that the check would be without effect upon the contract unless paid in due course. Not having so taken the check, the effect of its act was, to say the least, a noninsistance on the very provision upon which it seeks to predicate a forfeiture.

It appears that as soon as notice was communicated to Sturdivant that the draft had not been paid, he remitted the premium, together with protest fees, etc., which, at all events, reached the company's office on May 20, 1897, not more than five days after the time fixed by the final notice for forfeiture. Benefit Association v. Jackson, 2 N. E. Rep., 416. We conclude that there was no error in instructing a verdict for what was due on the policy.

2. The other question in the case is the propriety of giving judgment for statutory damages and attorney's fee. It is not necessary, as we view this matter upon this record, to notice the question of the constitutionality of article 3071, Revised Statutes, which is as follows: "In all cases where a loss occurs, and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss." This statute is penal in its nature and the right to recovery under it is strictly statutory, and plaintiff did not bring herself strictly within its provisions. Schloss v. Railway, 85 Texas, 603. It does not appear that any demand had been made on the company for payment before suit, the only demand being the suit itself. It is contended that this demand was unnecessary, because defendant's attitude has ever since the attempted forfeiture been one of refusal, or repudiation of the policy and denial of its liability. It appears that defendant's pleading states that it furnished counsel for plaintiff with blanks, and at the time notified them that Sturdivant was not a member, and that it had always denied its liability since May 16, 1897. One witness testified to this, and others testified, in effect, that when a form of proof of death was asked for by plaintiff's attorneys, it was sent, but at the same time it was stated that Sturdivant was not a member of the company at the time of his death, and the company did not waive any right to any defense it had. The above acts may have been sufficient to dispense with the proofs provided for in the contract. But we think it matters not how vigorously the insurance company may have denied its liability, or asserted its determination not to pay, this can not be made to take the place of what the statute prescribes as essential to the accrual of these penalties. These acts do not constitute a failure to pay the loss after demand made therefor, and there has been no demand.

If the Legislature had intended that a suit on the policy was the demand provided for, and the defense of the suit constituted a failure to

pay after demand, it was useless to provide for a demand and failure to pay in order to render the company liable for these items. It would have been sufficient to provide that defendant would be liable for them if payment was not made in a reasonable time after suit. We think it was the intention of the Legislature to require a demand to be made after the policy became due, and before a suit, in order to satisfy the valid demand without putting the policy holder to the necessity of suing therefor. The demand was the significant act, intended to put the company upon election whether it would pay the sum demanded, or require the policy holder to sue therefor, and subject itself to these penalties if the plaintiff recovered judgment for such a sum.

We do not mean to say that the demand could not have been made after suit; on the contrary we think that the demand might be made thereafter, and a cause of action for the penalties set up by an amended petition, as an original suit, but in our opinion the suit itself would not be such demand as the statute intended.

We conclude upon these assignments that the proof showed no liability for the penalties, therefore so much of the judgment will be set aside, and the judgment upon the policy will be affirmed.

*Affirmed.*

Writ of error refused.