## STATE LIFE INS. CO. OF INDIANA v. LITTLE. (No. 2342.)

(Court of Civil Appeals of Texas. Amarillo. May 28, 1924. Rehearing Denied June 25, 1924.)

1. Payment ⚙═➤23—Check in trade-name not check of third party as affecting payment.

A check given by one under his trade-name in payment of individual indebtedness is not check of a third party, as regards payment.

2. Insurance ⚙═➤186(4)—Note of third party payment of premium.

Note of third party is payment, when an insurance company accepts it in lieu of cash as premium payment.

3. Insurance ⚙═➤665(3)—Facts held to sustain implied finding that insurance company accepted check as payment of premium.

Facts *held* to sustain an implied finding by trial judge that life insurance company accepted check, subsequently protested, in payment of premium.

4. Insurance ⚙═➤186(4)—Insurance company receiving check in payment of premium acquires additional right.

A life insurance company receiving a check in payment of an annual premium, though check is protested, acquires a right against insured which it did not have before receipt of check, since it may treat check as a personal obligation and collect it by suit.

5. Insurance ⚙═➤665(8)—Finding that insurance company holding protested check waived payment of premium by cash held warranted.

Finding *held* warranted that life insurance company receiving check subsequently protested in payment of premium and retaining it after protest, waived its right to insist upon cash payment.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Delphia Little against the State Life Insurance Company of Indiana. Judgment for plaintiff, and defendant appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Carrigan, Montgomery, Britain, Morgan, & King, of Wichita Falls, for appellee.

HALL, C. J. On May 31, 1919, the appellant company issued to L. H. Little a life insurance policy for $2,500 which contained the following double indemnity clause:

"During the premium paying period of this policy and excluding any time while the same may be in force as extended insurance, all premiums having been duly paid and this policy being then in force, in the event of the death of the insured resulting from bodily injury sustained and effected directly through external, violent and accidental means (murder or suicide, sane or insane, not included) exclusively and independently of all other causes provided such death shall occur within ninety days from the date of the accident, the company will pay to the beneficiary or beneficiaries hereunder, in addition to the amount otherwise due under this policy, the sum of $2,500."

The policy also contained nonforfeiture options as follows:

"After premiums have been paid for two years from the date hereof (this policy then being in force and provided there is no indebtedness against it) at the time any premium becomes due or within the period of grace or upon default in the payment of any premium when due, or within thirty-one days thereafter, the owner of this policy may select any one of the options in the following table and, in the event no such selection is made, the company will continue this policy in force as extended insurance, according to the first option and all other options will be deemed waived; such extended insurance being nonparticipating and without loan or cash values," etc.

No selection was made by the insured. All premiums prior to the 31st day of May, 1921, were paid, and the policy was in force on that date. Little received notice in due time that the premium would be due on May 31, 1921. On June 25th thereafter he mailed to the company a check signed "Little Sporting Goods Company" on the City National Bank of Wichita Falls, for the sum of $89.95, the amount of the annual premium. This check was received by the company June 27, 1921, and on the same day deposited in the Indiana National Bank of Indianapolis for the credit of its account, and the same was duly credited to the account of the company on that day. The check was forwarded by the Indianapolis bank to the Federal Reserve Bank at Dallas, Tex., and by that bank forwarded to the City National Bank of Wichita Falls, upon which it was drawn, for collection. The check was received by the Wichita Bank and on the 1st day of July, 1921, was protested "account of insufficient funds." The notary at once mailed notices of protest to the several indorsers, including the insurance company, which received its notice in due course of mail, shown to be not later than July 4, 1921. The protested check was returned by the City National Bank through banking channels and was received by the company on the 8th day of July, 1921. When the check was received from Little on June 27, 1921, the insurance company issued its formal and usual receipt, acknowledging payment of the premium in the sum of $89.95, due on the policy, May 31, 1921, the receipt showing payment on June 27, 1921. The receipt for the premium was mailed to Little at Wichita Falls and was received by him in due course of mail. The receipt is as follows:

"Office of the State Life Insurance Company, Indianapolis, Indiana. Received the ――――― an-

nual premium of ——, paid as follows: $89.-95 on policy No. 230080. Cash $89.95, due May 1, 1920, on the life of Layton H. Little, Wichita Falls, Texas, 1609 Lamar street. Read notice on back. Paid June 27, 1921. State Life Insurance Company, Albert J. John, Secretary. Countersigned: Kirk Howe, Cashier."

Notice on back:

"Should this policy be restored at any time by acceptance of premium after the same is due and payable, such restoration shall not create an obligation or a precedent for waiving any conditions of the policy in regard to subsequent nonpayment of any premium on the day it falls due. The insured, by acceptance of this receipt, agrees to this condition."

No communication was sent to Little by the company after the time it received the check and issued and mailed the receipt above set out. Little was drowned July 10, 1921, while in swimming with a party of friends. After the death of Little, Burnside, the local agent of the company at Wichita Falls, on July 11, 1921, wrote the company informing them of the death of Little and asking for death claim papers, which letter was received by the company July 13, 1921. On the same date the company wrote and mailed the letter to the beneficiary, the appellee herein, by registered mail, addressed to her at 1609 Lamar street, Wichita Falls, Tex. The letter reached Wichita Falls, July 15, 1921, but it was not delivered because she was not found at that address. The letter was returned and delivered to the company on July 28, 1921. The company then wrote Burnside, its agent, as follows:

"Referring to our letter to you of July 13th. The letter which we addressed to Mrs. Delphia Little on the same date, concerning the above claim, has just been returned to us unclaimed, and we are inclosing herewith this letter and the papers mentioned therein. We think it well to inclose the envelope in which the original letter has been inclosed when we sent it out originally. We will thank you to use your best efforts to deliver the papers, including the envelope, to the beneficiary."

The letter to Mrs. Little, dated July 13, 1921, and above referred to, is as follows:

"Dear Madam: We have been notified by Mr. A. W. Burnside that Mr. Layton Halbert Little, holder of State Life Insurance Company's policy No. 230080, met his death drowning on July 10, 1921. Inasmuch as you are named beneficiary in this policy we are inclosing you herewith our usual blank for the submission of claims and proofs of death. The policy holder gave a check of the Little Sporting Goods Company in the sum of $89.95, intended in payment of the annual premium on this policy, due May 31, 1921. The payment of the check was refused by the bank on which it was drawn and was protested. The premium due on the policy on May 31, 1921, was consequently not paid when due, nor within the thirty-one days of grace, and the policy therefore lapsed subject to the provision of the

policy for extended insurance. At the time of the insured's death the policy was in force under extended insurance provisions of the same. We are returning to you herewith the unpaid protested check. By the terms of the policy contract the double indemnity provision is not in force while the policy is in force under extended insurance. When we are in receipt of the proofs of death the matter will have our further attention."

This letter is signed by the company's assistant general counsel. On August 1, 1921, Burnside delivered to Mrs. Little death claim papers, together with said letter of July 13th. August 4th Mrs. Little wrote a letter to the company, acknowledging receipt of its letter on the 13th, saying in part:

"Your letter of the 13th, inclosing check which is marked protested and which was given in payment of policy No. 230080, held by my son, L. H. Little, has just been handed me. Herein you will find cashier's check in the amount of $92.03, to cover check and protest fees."

This letter was received by the company on August 8th, and it replied on the same date as follows:

"We have your letter of August 4, 1921, with which you inclose a check in the sum of $92.-03, which you state is to cover the protested check mentioned in our letter of July 13, 1921. As stated in our letter of July 13, 1921, the policy lapsed on account of the premium not having been paid within the period of grace. The policy was not reinstated and the payment of premium after death of insured could, under no circumstances, be accepted. Accordingly we are returning to you herewith the check which you have inclosed with your letter of August 4, 1921. The status of this matter is as explained in our letter of July 13, 1921."

This letter reached Wichita Falls on August 10, 1921, and on August 21, 1921, was returned to the company, unclaimed. Upon its receipt, on August 22d, they wrote Burnside as follows:

"On August 1st, you wrote us that you had delivered the death claim papers in the case of the above policy to Mrs. Little, insured's mother, Waco, Texas. In a letter from Mrs. Little dated August 14, 1921, Wichita Falls, she inclosed cashier's check in the amount of $92.03 to cover the former protested check. Of course we could not accept this remittance and accordingly on August 8th, immediately on receipt of the letter of Mrs. Little, we wrote her declining to accept the cashier's check and returned the same to her. It seems that the post office authorities were not able to deliver the letter and check and the same has been returned to us, unclaimed. Accordingly we are inclosing the letter of August 8th and the cashier's check in question, the original envelope, and will ask you to deliver the same to Mrs. Delphia Little. It is exceedingly important that this check and our letter of August 8th be given to Mrs. Little and we hope you will

be able to see that this is done. We will thank you to advise us of your action in the matter."

Burnside received this letter on the 24th or 25th of August and immediately delivered the same to Mrs. Little. On September 14th, Mrs. Little's attorneys wrote the company, transmitting proofs of death and making claim for double indemnity. The company replied, acknowledging receipt of proofs of death and advising appellee's attorneys that the claim was approved for $2,500, only, together with accumulated dividends, amounting to $16.96, for which sums the company inclosed its check in full of all claims. It was finally agreed that appellee might accept check for $2,516.96, in settlement but not in full of all claims. The remaining $2,-500 which she claimed under the double indemnity clause was left subject to further action. This suit was instituted to recover the additional $2,500. The defendant set up the nonforfeiture provisions of the policy and the double indemnity clause, hereinbefore set out, and alleged that the last premium preceding the death of the insured on July 10, 1921, was due May 31, 1921, that it had not been paid within the 31 days of grace, and that no option in the policy had been selected by the holder, and in the absence of such selection the policy was in force simply as extended insurance, and that the double indemnity clause did not apply. The answer sets out at considerable length the facts hereinbefore stated with reference to the receipt of the original check, the issuance of the receipt acknowledging payment, the refusal by the bank to pay the check, and its protest. It denied that the check had been received in payment of the premium. By supplemental petition the appellee alleged that by accepting the check the defendant waived the payment of the premium in cash and was bound by the receipt which it had issued; that by its retention of the check from July 8th, to July 13th, when it received notice of the death of the insured, it had waived any right to forfeit the policy. A trial was to the court without a jury and resulted in a judgment for plaintiff.

Appellant contends by its first proposition that under the plain provisions of the double indemnity clause and the evidence showing that the premium had not been paid within the thirty days except by check of a third party, which was afterwards protested for want of funds, and that the insured died without payment of the premium except by such check, there was no liability for the double indemnity. It is further contended that a receipt, though unconditional, is only prima facie evidence of payment where other evidence shows that payment was not in fact made, and that if the policy holder sends a check which is not paid and he is aware of its nonpayment, and does not protect the

264 S.W.—21

check, it is not such payment as will prevent the lapse of the policy.

[1-3] It was shown that when the check was issued Little had sufficient funds in the drawee bank to meet it, and we cannot presume that he issued it fraudulently. Its issuance and transmission under the circumstances disclosed by this record, evidences a bona fide intent on his part to pay the premium. No oral testimony was introduced upon the trial but it was agreed:

"That the notary protesting check at once mailed to the several indorsees of said check, including the defendant company, a notice of protest, said notice being addressed to the defendant company at Indianapolis, Indiana, and that said notice was received by the defendant company in due course of mail and that in due course of mail should have received the same not later than the 4th of July, 1921."

It does not appear from this stipulation of counsel, or elsewhere in the record, that notice of protest was sent to Little. It was further stipulated:

"That no communication whatever was addressed to or sent to Layton H. Little by the defendant life insurance company from the time it received its check and issued and mailed the receipt above referred to during his lifetime."

From these two stipulations we must presume that Little died believing that his premium had been paid, and that the check was issued and mailed with a bona fide intent on his part to pay it. It appears that at about the time this check was issued he issued another check for $1,000 which he sent to a creditor in St. Louis, with the request that such creditor would not cash it until July 1st. The request was not heeded, and that check was presented and paid at Wichita Falls before the premium check was presented and protested. It was further shown that Little was doing business under the name of Little Sporting Goods Company, that he was the sole owner of the business, and we may presume that his bank account was kept in his trade-name, and if this is true it was not the check of a third party. In this connection Howe, the cashier of the insurance company, testified:

"The company accepts checks, bank drafts, postal money orders and express money orders, for the payment of premiums, as well as money. It is a fact that when we received a check of the Little Sporting Goods Company that we considered it a good and valid check for the amount which it was drawn. It is a fact that we considered it a good and valid obligation for the amount for which it was drawn. It is a fact that we accepted said check as a valid obligation for the amount for which it was drawn at the time we received the same. It is a fact that we accepted it as a valid obligation and issued our receipt for the premium due on said policy."

This witness further testified that the receipt mailed to Little was an unconditional receipt of the same sort issued by the company in every case where the premium had been received and accepted by the company, that Little was not notified that the receipt was conditional, and that inclosed with the receipt was a card of thanks for the remittance. It has been held that the note of a third party is payment when an insurance company accepts it in lieu of cash as premium payment. Michigan Mutual Life Insurance Co. v. Bowes, 42 Mich. 19, 51 N. W. 962. Either a draft, an order on another, a cashier's check, or a post office money order would be the obligation of a third party, but when an insurance company accepts either in settlement of premiums it is by the great weight of authority held to be payment. Life Insurance Co. v. Ray, 50 Tex. 511; Johnson v. Standard Life & Accident Insurance Co. (Tex. Civ. App.) 97 S. W. 831; Travelers' Insurance Co. v. Jones, 32 Tex. Civ. App. 146, 73 S. W. 978; Texas Mutual Insurance Co. v. Munson, 2 Posey, Unrep. Cas. 649; Mutual Benefit Life Insurance Co. v. Chattanooga Savings Bank, 47 Okl. 748, 150 Pac. 190, L. R. A. 1916A, 669 and note, 674–682. It seems clear that Little fully intended to pay his premium by the check. The question for determination is, Do the facts under the law sustain an implied finding by the trial judge that the company accepted it in payment?

[4] The contention of appellee is that there is a material difference between a case where a check is delivered in payment of a valid and subsisting debt, and one where a check is delivered and received in payment of the premium due upon a life insurance policy; that in the case of an ordinary debt, if the check is not paid, the creditor may ignore the giving of the check and sue upon the original obligation. In other words, the giving of the check does not put the drawer in any different attitude towards his debt than he previously occupied. In the case of a life insurance premium, however, if a check is given and accepted in lieu of the premium, the life insurance company acquires a right against the insured which it did not have before the receipt of the check. Prior to that time the only right which the company had, in the event of a failure to pay the premium, was to forfeit the policy, but after a check is given the company has the additional right to hold and treat the check as a personal obligation and to collect the same by suit. We think this proposition is sound and is sustained by the authorities. The facts before us, briefly stated, show that an unconditional receipt in full was issued and mailed to Little with a card of thanks for the remittance on the same day the check was received. The check was immediately deposited in the bank by the company, and its account there duly credited with the amount. This all occurred on June 27, 1921, thirteen days before the death of Little. No objection was made by the company because the amount was remitted by check or upon the ground that it was the check of a third party. So far as the record shows, the check took the identical course through the records of the company and banking channels as it would have taken if it had been certified by the drawee bank at Wichita Falls. Howe's testimony shows that it was treated as a valid check, and the conduct of the company with reference to it in issuing its receipt was the same as if the remittance had been by bank draft, post office money order, or the cash itself. The check was protested July 1st, and, according to the stipulation quoted above, notice of protest reached the company not later than July 4th, six days before the death of Little, and no effort was made to recall the receipt. The protested check was actually received by the company on July 8th, two days before the death of Little, and was held by the company from the 8th without communicating in any way with Little or the drawee bank until it received a letter on the 13th from its agent notifying it of Little's death. In this connection, the company's cashier, Howe, testified:

"As to whether, when we received notice of the protesting of said check, or after said check was returned to us or the defendant, the defendant company or I or any of its officers, agents, or employees, wrote a letter or otherwise communicated with the said Layton H. Little, I will say that we were just ready to write to Mr. Little in reference to his protested check when we received notice of his death, and the letter was not written."

He further testified:

"This check was held by defendant company from July 8, 1921, to July 13, 1921, to ascertain what the check was originally intended to pay, and to prepare the necessary data and blanks in reinstatement of the policy. I did not request the said Layton H. Little to return the premium receipt prior to the receipt of notice of his death. We did not notify him that the premium receipt was not in force or return the unpaid check to him, and we would have requested him to have reinstated the policy."

It will be observed that according to this witness the company did not intend to recall the receipt nor to declare the policy forfeited, but was ready to write him only with reference to the protested check itself, and according to said witness it was holding the check to prepare the necessary data and blanks for reinstatement of the policy. The court was not bound to believe this last statement.

[5] Under this record the question of acceptance of the check as payment is one of fact. The company could have communicated with Little by letter before his death, after it received notice of protest on July 4th, and

by wire, after the check was returned and received by it on July 8th. Under somewhat similar conditions, James, O. J., in Northwestern Life Assurance Co. v. Sturdivant, 24 Tex. Civ. App. 331, 59 S. W. 61, held that the company had waived its right to insist upon the cash payment. If the company had not intended to accept the check ordinary business prudence would have demanded that it return it to Little and request the return of the receipt. From July 4th no effort was made by the company to repossess the receipt, and, as said by Howe, it was only preparing to write Little concerning his protested check. In addition to the Sturdivant Case, supra, the case of Veal v. Security Mutual Life Insurance Co., 6 Ga. App. 721, 65 S. E. 714, presents a similar state of facts, which was held to constitute a waiver. We think the facts as hereinbefore set out sufficiently support the presumed finding of acceptance and waiver. The absence of anything done or said by the company prior to the time it received notice of the death of Little to recall its receipt is a persuasive circumstance which the jury might consider. Numerous cases are cited in the instructive note above referred to, in L. R. A. 1916A, 674, to which we refer.

As insisted under the fourth proposition, we do not hold that these facts can, as a matter of law, be construed to be a waiver, but we think they are sufficient to support a finding to that effect.

The judgment is affirmed.