NIAGARA FIRE INS. CO. v. BRYAN & HEWGLEY, Inc.

No. 11343.

United States Court of Appeals
Sixth Circuit.

March 14, 1952.

T. M. Galphin, Jr., Louisville, Ky. (T. M. Galphin, Jr., and Ogden, Galphin & Abell, all of Louisville, Ky., Pride Tomlinson, Jr., Columbia, Tenn., on the brief) for appellant.

Cecil Sims, Nashville, Tenn. (J. L. Jones, Pulaski, Tenn., Cecil Sims, and Bass, Berry & Sims, all of Nashville, Tenn., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant complains of a judgment against it on a policy issued by it to the appellee and covering damages by windstorm. Its defenses in the court below were that the terms of the policy had been violated by the insured in respect to inventories, the keeping of books and records by which a loss could be verified, the lack of evidence to support the judgment, the finding by the jury of bad faith in failure to timely pay the loss under Tennessee law and so subjecting it to a penalty, and errors in the admission of evidence.

The policy was not the usual contract of insurance, providing for a fixed liability for total loss and a predetermined annual premium. It provided that the insured should pay a premium based on the average of the total monthly values of its merchandise with a minimum of $100 per year and limited maximum recovery for loss to $30,-000. The insured obligated itself to report to the insurer, not later than thirty days after the last day of each month, the total value of its merchandise and to permit the insurer, at all reasonable times during the term of the policy, to examine its books and records. The policy also provided that in case of loss, if the insured's last reported total value was less than the actual total value in its warehouse for the reported period, it could only recover, in the event of loss, that proportion which the reported value bore to the actual total value of the loss, but not exceeding $30,000.

The insured, though its owner Lewis Hewgley and its superintendent Felker, took inventory at the end of every month and for each month submitted a report of the total value of goods in its warehouse. Its last report before the windstorm was made on March 31, 1949 and showed a valuation of merchandise of $7,600. Shortly before the windstorm on May 1st, it again took an inventory of its merchandise. This inventory was not reported because the report was not then due and showed an inventory in excess of $50,000. After the windstorm, the insured reported its loss immediately to the insurer and turned over to it all the books and records it had. Some of its records were destroyed during the storm and the inventory of March 31, 1949 was thought lost or destroyed. It was later found after suit had been commenced but before the trial in June or July, 1950. It was never submitted to the insurer though produced at the trial. Its accuracy became one of the important issues in the cause and the subject matter of a special verdict of the jury which found that the amount of merchandise on hand on March 29th was the reported amount of $7,600. The insurer sent its adjuster Hatchett to investigate the loss. He arrived a day or two after the storm and reported that the loss exceeded the maximum recovery provided by the policy and that he had found no violations of policy provisions. The amount of the loss was also made the subject matter of a special verdict by the jury, which found the loss to be in excess of the maximum liability provided in the contract. The insured submitted its formal proof of loss to the insurer on September 9, 1949. The insurer refused to pay and suit was commenced March 22, 1950. The

verdict was for $30,000 for the loss upon which the court directed a computation of interest from July 1, 1949. By a third special verdict the jury found bad faith on the part of the appellant in refusing to pay and assessed a penalty of $7,500.

There was substantial evidence, if indeed it was not admitted, that the total loss, after deducting salvage, was far in excess of the maximum contract liability. The insurer contested the claim principally upon the failure of the insured to keep adequate books and records, and by a challenge to the accuracy of the March 31st inventory. This challenge was to bring into operation the provision in the policy which required that in the event the last reported total value was less than actual total value for the reported period, recovery should be limited to such percentage as the reported value bore to the actual loss. The contract, however, did not require the insured to keep books and records in any specific or designated form. The court held, and we agree, that if from such books or records as the insured did keep it was possible to verify reported values, the policy requirements were met. American Eagle Fire Insurance Company v. People's Compress Company, 10 Cir., 156 F.2d 663. The insured had preserved a record of every transaction, its purhases, sales and bank deposits, which, notwithstanding losses suffered in the windstorm, were sufficient to verify the amounts of all inventories reported to the insurer, and they were made available to it. While the insured thought that its inventory of March 31, 1949 was lost or destroyed, it was subsequently found. This was, however, after suit was brought though before trial. When there submitted, the insurer challenged its admissibility, largely upon the authority of Stovall v. Sterling Fire Insurance Co., 163 La. 284, 111 So. 707. That case is not, however, applicable since it involved an alleged violation of the "iron-safe" clause. There is no such clause in the present policy. There is no logical inference to be derived from the evidence that the insured's purpose was to surprise the insurer, there was no claim of surprise nor proof of fraud or fabrication. The March in-

ventory was authenticated under oath by Hewgley and Felker, the latter having no interest in the lawsuit because he had left the employment of the insured. There was no error in admitting the inventory.

An exhibit was admitted as proof of the amounts of merchandise in the warehouse for the five or six months preceding the windstorm. Its admissibility was attacked on the ground that it was mere hearsay,—the author of the exhibit not appearing as a witness and not having been put under oath or subjected to cross-examination. The statement was, however, prepared at the request of appellant from original records and its accuracy testified to by Hewgley. It was offered merely to show that the insured's books were sufficient to reflect the amount of stock in the warehouse monthly reported. These reports were in gross substantially the same as the totals shown in the exhibit. For that purpose, it was competent to meet the charge that the insured kept no books or records by which the defendant could verify reported values. Evidence may be competent for one purpose even though entirely incompetent for another. Bram v. United States, 168 U.S. 532, 568, 18 S.Ct. 183, 196, 42 L.Ed. 568.

§ 6434 of the Tenn. Code provides that in all cases when a loss occurs and the insurance company refuses to pay the same within sixty days after a demand is made by the holder of the policy, it shall be liable in addition to the loss and interest thereon in a sum not exceeding 25% of the liability for the loss. This is upon the condition that it be made to appear to the court that the refusal to pay was not in good faith, that failure to pay inflicted additional expense or injury. The Tennessee cases hold that this is a penal provision and must be strictly construed. Tittsworth v. Insurance Company, 6 Tenn.App. 206, People's Bank & Trust Company v. Fidelity & Guaranty Company, 156 Tenn. 517, 3 S.W.2d 163. In a recent case, Third National Company v. Thompson, 28 Tenn.App. 436, 191 S. W.2d 190, the court held that in order to justify a penalty, the policy must by its terms have become due and payable, there must have been a demand on the insurer

for payment, the insurer must have refused to pay the loss within sixty days and such refusal must be not in good faith. The record here fails to show an express demand upon the insurer for payment. The insured seeks to have a demand implied from the fact of refusal. In Mutual Reserve Fund Life Association v. Tuchfeld, 6 Cir., 159 F. 833, 846, this court examined the Tenn. Statutes and concluded that a formal demand is essential in order to render the insurer liable for the penalty, notwithstanding its apparent futility, and that the bringing of suit is not such a demand. See also Northwestern Life Assur. Company v. Sturdivant, 24 Tex.Civ.App. 331, 59 S.W. 61. A like construction of a similar statute was adopted by the Supreme Court in Iowa Life Insurance Company v. Lewis, 187 U.S. 335, 23 S.Ct. 126, 47 L.Ed. 204. Moreover, we find no substantial evidence of bad faith in the refusal to pay. There were reasonable bases for controversy including the sufficiency of the insured's books and records, the great disparity in totals of inventories from month to month and between the last reported inventory and the amount of the loss. These called for explanation, and suggested the need of proof. When payment was refused, and the suit below defended, the verification of the March inventory had not yet been brought to the notice of the insurer. The defenses were not so frivolous and lacking in substance as to warrant submission to the jury of an issue of bad faith. We stated in Southern Surety Company v. Motlow, 6 Cir., 61 F.2d 464, 468: "[In suits] of this kind, an insurance company has the right to refuse to pay a claim so long as it has reasonable grounds to believe that it has a meritorious defense."

■ In like vein was the Tennessee Court in Kendrick-Roan Grain Elevator Company v. Weaver, 128 Tenn. 608, 635, 163 S.W. 814, 821: "The statute does not penalize insurance companies for defending suits brought against them, even though they should ultimately lose."

The court was in error in submitting the question of bad faith to the jury upon this record. The penalty judgment may not stand.

■ The court allowed interest upon the $30,000 judgment from July 1, 1949, upon the ground that the loss became due and payable on that date. We need not concern ourselves as to whether the loss then became due. The complaint recites that November 9, 1949 was the date on which payment fell due under the express terms and provisions of the policy and also that interest was due from and after that date. The rule is that parties to an action are judicially bound by their pleadings therein, Scott v. C. Y. R., 8 Cir., 117 F.2d 36, Sinclair Refining Company v. Tompkins, 5 Cir., 117 F.2d 596. Granted that the insured could have amended its complaint to conform to the proofs, it did not do so, Wilson v. Lamberton, 3 Cir., 102 F.2d 506. We have no doubt of our power to modify a judgment instead of remanding the cause for a new trial in circumstances such as here presented, in view of the provisions of Title 28 U.S.C.A. § 2106. See U. S. v. Illinois Surety Company, 7 Cir., 226 Fed. 653.

The judgment is modified by eliminating therefrom the $7,500 penalty, by directing a computation of interest from November 9, 1949, and, as so modified, it is,

Affirmed.