David SCHACHAR and Joan
Schachar, Appellants,

v.

NORTHERN ASSURANCE COMPANY
OF AMERICA and W. David Bayless
Sr., Individually and d/b/a W. David
Bayless Insurance, Appellees.

No. 05–89–00007–CV.

Court of Appeals of Texas,
Dallas.

Jan. 25, 1990.

Rehearing Denied March 12, 1990.

Eric Weisberg, Denison, for appellants.

Sidney H. Davis, Robert G. Hogue, Dallas, for appellees.

Before HOWELL, ROWE and
KINKEADE, JJ.

## OPINION

HOWELL, Justice.

This is a suit on an insurance policy. The plaintiffs, David and Joan Schachar ("Policyholders" or "Holders"), sought to recover for the theft of their automobile from their insurance carrier, Northern Assurance Company of America ("Carrier"), and from the broker selling the policy to them. The trial court granted summary judgment to Carrier and its broker in response to an assertion that the policy had expired for non-payment of premium before the loss occurred. We hold that a fact issue exists upon the question of waiver and estoppel and, therefore, reverse and remand.

Holders had purchased and renewed auto theft coverage from Carrier for several years. Carrier mailed out a renewal notice and billing dated May 19, 1986, which showed a payment due-date of May 29th. Curiously, this mailing was closely followed by the mailing of a cancellation notice "for non-payment of premium" dated May 20th which recited an effective date of June 5th if the premium then remained unpaid.

The affidavit of Holders reflects, at least for summary judgment purposes, that Holders mailed their premium check to Carrier on May 29th. The drawee bank returned that check to Carrier unpaid. On September 8, 1986, the date of loss, the check remained in the possession of Carrier, and Carrier had previously made no effort to notify Holders that their bank had refused to honor the item. Holders claim that Carrier did not return their check to them until after their car was stolen, and

Carrier's summary judgment evidence indicates that it had possession of the check as late as December 18, 1987. Carrier did not advise Holders of non-payment until after Holders had submitted their theft claim. Holders maintain that, through the date of loss, they remained unaware that their check had been returned unpaid.

■ We address only the point of error in which Policyholders contend that the pleadings and the evidence presented a fact issue whether Carrier waived the right to cancel or was estopped from claiming that the policy was cancelled. It is a well settled rule in the law of insurance that:

> When, under a policy of insurance, a forfeiture has been worked and the insurer has knowledge of the existence of facts which constitute the forfeiture of the policy, any unequivocal act done after the forfeiture has become absolute which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. Under the above rule, in order to bring about a waiver of the forfeiture and reinstatement to the instant case, three conditions of fact are necessary:
>
> (1) The insurer must have had knowledge of the facts constituting the forfeiture of the policy in question; (2) the forfeiture must have been complete and absolute; and (3) there must not have been some unequivocal act on the part of the insurer which recognized the continuance of the policy, or which was wholly inconsistent with the forfeiture.

*Bankers Life & Loan Ass'n of Dallas v. Ashford,* 139 S.W.2d 858, 860 (Tex.Civ.App.—Galveston, 1940, no writ) (citations omitted).

Other cases hold that the retention of a dishonored check by an insurance company under certain circumstances will constitute a waiver even where there is no overt act on the part of the insurer. In *State Life Insurance Co. of Indiana v. Little,* 264 S.W. 319, 323 (Tex.Civ.App.—Amarillo 1924, writ ref'd), the insured mailed a premium check to his insurer, and the company mailed its usual receipt to him with no indication that the receipt was being issued conditionally. About seven days after the check was deposited and six days before the insured died, the insurer received notice that the check had been dishonored. The insurer actually received the dishonored check two days before the insured's death and held the check for five days until after it received notice thereof. Testimony indicated that the insurer did not intend to recall its receipt nor to declare the policy forfeited but planned to write the insured asking him to make the check good.

The *Little* court relied on two cases with similar facts to support its conclusion that the company had waived its right to insist upon cash payment: *Life Assurance Co. v. Sturdivant,* 24 Tex.Civ.App. 331, 59 S.W. 61 (1900, writ ref'd) and *Veal v. Security Mutual Life Insurance Co.,* 6 Ga.App. 721, 65 S.E. 714 (1909). *Little* held that the absence of anything done or said by the insurer to recall its receipt before it received notice of death was a persuasive circumstance which the jury might consider. *Little,* 264 S.W. at 323. The court further stated:

> [I]n the case of an ordinary debt, if the check is not paid, the creditor may ignore the giving of the check and sue upon the original obligation. In other words, the giving of the check does not put the drawer in any different attitude towards his debt than he previously occupied. *In the case of a life insurance premium,* however, if a check is given and accepted in lieu of the premium, *the life insurance company acquires a right against the insured which it did not have before the receipt of the check.* Prior to that time the only right which the company had in the event of a failure to pay the premium, was to forfeit the policy, but after a check is given the company has the additional right to hold and treat the check as a personal obligation and to collect the same by suit. We think this proposition is sound and is sustained by the authorities.

*Id.* at 322 (emphasis added). *Little* also noted that it appeared that the insured had issued his check with a bona fide intent to

pay the premium and that he had died believing that it had been paid. *Id.* at 321.

Our case differs from *Little* in that no receipt was issued, but other circumstances might have confused or misled Holders. The cancellation notice for non-payment was mailed only a day or two after the original bill, and the cancellation notice was mailed before the due date shown on the original bill. This unusual sequence might have caused Holders not to view the cancellation notice with the same alarm as would ordinarily be caused by such a notice. This, coupled with the failure of Carrier to return the check, could have misled Holders to believe that they still had coverage even though the policy imposed on Carrier no obligation to return any dishonored check. In addition, in today's case, Carrier put itself in a position inconsistent with the forfeiture of the policy in that, by retaining possession of the check, it retained the right to enforce payment of the check, even through suit if necessary. The third element of waiver of a forfeiture was therefore present. *See Bankers Life,* 139 S.W.2d at 860.

*Stone v. Brady Mutual Life Insurance Association,* 2 S.W.2d 538, 539 (Tex.Civ. App.—Austin 1927, no writ), involved similar facts. That insurer (1) retained the check given it by the insured after it had been returned by the bank unpaid, (2) gave the insured no notice indicating a forfeiture nor advising him that the check had not been paid, (3) again presented the check for payment more than thirty days after the forfeiture period had arisen,[1] and (4) prepared proof-of-death forms for use by the plaintiff beneficiaries. Certain facts in our case are similar. At a trial on the merits, a fact finder could decide on the basis thereof that a waiver had occurred. We therefore hold that it was error for the trial court to hold, by implication, that Policyholders had failed to demonstrate the existence of a fact issue upon their waiver and estoppel claims.

Before us, Carrier relies on cases from federal courts and other states. Inasmuch as this case turns upon Texas law, those cases are only persuasive, at most. We have examined each case and consider them distinguishable.[2] Were they not distinguishable, we would hold the Texas view to be the better one.

■ Carrier argues that if Policyholders sought to defeat Carrier's right to summary judgment on grounds of waiver and estoppel, they had the burden to plead and present summary judgment proof in support thereof. We agree. *See "Moore" Burger Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1972). Waiver and estoppel are generally considered defensive issues. They can, however, be asserted as replication issues, a defense urged by the original plaintiff to the defendant's affirmative pleading. Such is the case in bar. Plaintiff Policyholders sought in their pleadings to defeat the defense issue of cancellation for non-payment. Thus, for summary judgment purposes, Holders pleaded replication issues and became entitled to present summary judgment proof to demonstrate a fact issue thereon. *See "Moore,"* 492 S.W.2d at 936–37.

Carrier further argues that Holders failed to present proper summary judgment proof in support of their claims of waiver and estoppel. We disagree. We do not reach Carrier's principal contention that the supplemental controverting affidavit was untimely because we consider the original controverting affidavit to be suffi-

---

1. Here, Carrier contends that it presented Holders' check for payment on June 13th and again on June 23, 1986. Such action was obviously inconsistent with the expressed intent to terminate the policy on June 5th.

2. Carrier's authorities: *In re Meinke, Peterson and Damer, P.C.,* 44 B.R. 105 (Bankr.N.D.Tex. 1984) (distinguishable because insured had made no attempt to pay the premium); *Big Joe v. Pioneer American Ins. Co.,* 446 F.2d 28 (9th Cir.1971) (distinguishable because insured did not mail check until after due date, also no confusing notice of cancellation, as here); *Keller v. North American Life Ins. Co.,* 301 Ill. 198, 207–09, 133 N.E. 726, 730 (1921) (distinguishable, involves an unpaid promissory note rather than a check); *Light v. Equitable Life Ins. Co. of Iowa,* 101 Colo. 278, 282, 73 P.2d 530, 532 (1937) (another promissory note case).

cient. That affidavit states in part as follows:

Sometime in late May, 1986, I received a bill for my automobile insurance coverage and immediately sent a check (# 126) for $233.66 to the insurance company as directed. I had no reason to doubt that the check would be honored. After I sent such check, I believed that I was insured under a renewal of my old policy and gave no further thought to the matter until my automobile was stolen on or about September 8, 1986, when I called my insurance agent, David Bayless Insurance, Inc. Then, or shortly thereafter, I was informed that my policy had been cancelled effective June 5, 1986, and that my check had not been honored. That was the first time that anyone had told me that there was any problem with coverage or that my policy had been cancelled.

This statement, from its context, was obviously a recitation of facts within the personal knowledge of the affiant and as to which he was competent to testify. Competent summary evidence which raised the issues of waiver and estoppel were: (1) the extract from Holders' affidavit, quoted above, stating that Holders were not told that their check had been dishonored, (2) a copy of the unpaid check submitted by Insurer indicating that it was still in Insurer's possession as late as December 18, 1987, and (3) copies of the initial premium notice dated May 19, 1986 and the cancellation notice dated May 20, 1986.

■ In summary, we conclude that an insurer may waive the forfeiture of a policy by retaining the insured's dishonored check under certain circumstances and may be estopped from asserting the cancellation of the policy. These issues of waiver and estoppel were fact issues to be determined by the trier of fact. We conclude that there was sufficient competent summary judgment evidence raising them as genuine issues of fact. We hold that the trial court erred in granting Carrier's summary judgment.

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.